WILLIAM P. PAHL EQUIPMENT CORP. et al., Respondents, v
HENRY KASSIS et al., Appellants, et al., Defendants.

First Department, August 13, 1992

24

APPEARANCES OF COUNSEL

*Philip M. Halpern* of counsel *(Mark C. Durkin* with him on the brief; *Collier, Cohen, Shields & Bock,* attorneys), for appellant.

*David L. Deitz* of counsel *(Leonard Holland* with him on the brief; *Wohl Loewe Stettner Fabricant & Deitz,* attorneys), for respondents.

## OPINION OF THE COURT

SULLIVAN, J. P.

This action arises out of two commercial transactions entered into in September 1989, in the first of which 232 W. 58th Street Associates (Associates), a New York partnership, agreed, by written contract of sale dated September 12, 1989, to sell to Henry Kassis, a defendant herein, the premises located at 232 West 58th Street, in New York City, for $950,000, $200,000 of which was to be paid in cash, with the $750,000 balance, payable over time, secured by a purchase-money mortgage. It is undisputed that Kassis and his designee, 232 West Associates, also a defendant herein, made all the payments due under the contract of sale as well as all payments called for under the terms of the mortgage and note.

Although Kassis apparently was interested only in the purchase of the building, he also entered into a second transaction involving the sale by William P. Pahl Equipment Corp. (Pahl) to him, pursuant to a written September 12, 1989 memorandum of agreement, of certain assets—the name and customer list—of a retail and wholesale cosmetics business located at the subject premises for $350,000, $100,000 of which was paid on account. The entire transaction was structured as two separate sales, so that Associates could avoid certain adverse tax consequences. Title to the premises was conveyed on November 21, 1989, and Kassis took possession on or about December 19, 1989. After Kassis refused to make the final $250,000 payment due on the sale of Pahl's cosmetics business, Pahl and Associates, plaintiffs herein, thereafter commenced this action, seeking, in a first cause of action, to foreclose the purchase-money mortgage based upon defendants' default in "concluding the sale of the business, and paying their final installment of the purchase price thereof." A second cause of action sought $250,000 by virtue of defendants' having "defaulted under the purchase money note, mortgage and memorandum of agreement." The third cause of action sought, on the grounds of mutual mistake, fraud or unilateral mistake, reformation of all the written instruments executed in connection with both transactions so as to make the default under the terms of the memorandum of agreement a corresponding default under the contract of sale and purchase-money note and mortgage.

Defendants moved to dismiss the complaint pursuant to

CPLR 3211 (a) (5) and (7) on the grounds that, absent a default under the mortgage note, no right of foreclosure existed and no default was alleged; that the contract of sale and memorandum of agreement were two separate, wholly independent and integrated documents, and a breach of one was not a breach of the other and that plaintiffs failed to state legally cognizable causes of action for either damages or reformation. The motion was granted, the IAS Court (Kenneth L. Shorter, J.) finding that the two transactions were separate and independent, that the seller's remedy for the buyer's default in the purchase of the business was limited, in accordance with the terms of the memorandum of agreement, to the amount of moneys actually paid and that a cause of action in fraud sufficient to warrant reformation had not been pleaded. Leave to replead within 30 days was granted. Reargument was ultimately denied.

Plaintiffs served an amended complaint which set forth the same three causes of action, albeit in a different order, and realleged, verbatim, 30 of the 40 paragraphs of the original complaint. It added a few allegations to the fraud and reformation cause of action, as well as the prayer for relief. After withdrawing their notice of appeal from the dismissal of their first and second causes of action only, plaintiffs served a second amended complaint asserting identical causes of action, separating the original complaint's third cause of action seeking reformation into three separate causes of action.

Defendants moved to dismiss the second amended complaint in its entirety, asserting, *inter alia,* legal insufficiency and the law of the case doctrine. The IAS Court, on its last day before retirement, granted the motion and dismissed the complaint in its entirety. The appeal from that determination was dismissed for lack of prosecution pursuant to a February 4, 1992 order of this court.

In the interim, plaintiffs moved pursuant to CPLR 2221 for leave to renew and reargue the motion to dismiss the second amended complaint on the grounds of newly discovered evidence and the court's overlooking of applicable law and misapprehending the facts. Defendants opposed the motion and cross-moved for the imposition of financial sanctions pursuant to 22 NYCRR 130-1.1 *et seq.* By virtue of the original IAS Court's retirement, these motions were heard by a new court (Herman Cahn, J.), which, by order of October 9, 1991, granted reargument as to all but the previously dismissed fraud and deceit causes of action, upon reargument, the court

reinstated three of the five causes of action of the second amended complaint, granted plaintiffs leave to replead another and denied the cross motion for sanctions. Defendants appeal. We reverse.

■■ A motion for leave to reargue pursuant to CPLR 2221 is addressed to the sound discretion of the court and may be granted only upon a showing "that the court overlooked or misapprehended the facts or the law or for some reason mistakenly arrived at its earlier decision." *(Schneider v Solowey,* 141 AD2d 813.) Reargument is not designed to afford the unsuccessful party successive opportunities to reargue issues previously decided *(Pro Brokerage v Home Ins. Co.,* 99 AD2d 971) or to present arguments different from those originally asserted *(Foley v Roche,* 68 AD2d 558). A motion to renew under CPLR 2221, on the other hand, is intended to draw the court's attention to new or additional facts which, although in existence at the time of the original motion, were unknown to the party seeking renewal and therefore not brought to the court's attention. *(Beiny v Wynyard,* 132 AD2d 190, *lv dismissed* 71 NY2d 994.) Judged by these standards, it is clear that plaintiffs failed to meet their burden of proof in demonstrating new or additional facts warranting renewal or that the original IAS Court overlooked or misapprehended the facts or law so as to warrant reargument.

The renewal aspect of the motion under review was based on a claim of newly discovered evidence, namely, a series of documents obtained by plaintiffs in response to their discovery requests in a separate lawsuit, and primarily consisting of the personal notes of the real estate broker supposedly encompassing the substance of conversations between the principals of Pahl and Associates and Kassis during the negotiations of the sale of the subject premises and cosmetics business. The contents of these documents, however, constitute neither new nor additional facts not known to plaintiffs at the time of the motion to dismiss the second amended complaint since they represented conversations and negotiations in which their principals had taken part and had to be aware of since September 1989. Similarly, these so-called new facts were, as even the court hearing the reargument/renewal motion conceded, the same facts plaintiffs had asserted in their opposition to the motions to dismiss the second amended complaint and even the original complaint. Thus, renewal was properly denied.

■ The reargument phase of plaintiffs' motion is equally

devoid of merit. Aside from asserting a facile and completely unsupported misapplication of the law argument, they claimed, in passing, that the court overlooked the authorities they cited relating to its interpretation of the memorandum of agreement's liquidated damage clause. The clause should be read, plaintiffs argued, "in light of the contract for the sale of the [p]remises" and interpreted to apply only to events prior to November 21, 1989, the date of the closing of title thereto. This same argument as to the validity and effectiveness of the liquidated damage clause was made in opposition to the motion to dismiss the original complaint, on the reargument thereof and, finally, in opposition to the motion to dismiss the second amended complaint. Having heard the same argument repeated three times, the court, understandably, did not feel obliged to articulate the claim any further or expound on the reasons why the authorities advanced did not overcome the second amended complaint's defects. Nor was the court required to do so. Plaintiffs, as the renewal/reargument court recognized, failed to meet their burden of proof in providing the court with a basis upon which to grant the motion and to reinstate the previously dismissed causes of action. Once the court found that plaintiffs had failed to set forth any grounds upon which to grant renewal or reargument, it should have concluded its analysis and denied the motion. *(See, Duque v Ortiz,* 154 AD2d 333, 334; *see also, Klein v Mount Sinai Hosp.,* 121 AD2d 164.)

In any event, on the merits, each of the four reinstated causes of action is legally insufficient in that it either fails to state a cause of action or is barred by documentary evidence and payment. The third cause of action seeks, *inter alia,* reformation of the contract of sale and memorandum of agreement so as to make a default under the latter a corresponding default under the former and, to that extent, was found to be validly pleaded by the renewal/reargument court. In that regard, plaintiffs alleged that neither agreement "fully sets forth that Kassis' obligation to pay for the business was absolute after Kassis acquired the [p]remises", that the liquidated damage clause in the memorandum of agreement did "not clearly set forth that it is applicable only prior to the conveyance of the [p]remises and not afterwards" and that the documents did "not clearly set forth that a default under the [m]emorandum of [a]greement is a default under all the other documents". They further alleged that "[t]he errors in committing the agreement of the parties to writing resulted from

the mutual mistake of the parties, the mistake of plaintiffs and the fraud of [defendants] or scrivener's error." The fifth cause of action, as to which leave to replead was granted seeks reformation of the purchase-money mortgage and note so that a breach of the memorandum of agreement would be a corresponding breach of the mortgage and note, thereby providing a basis for foreclosure.

In order to obtain reformation of a written instrument it must be shown that "the parties came to an understanding, but in reducing it to writing, through mutual mistake, or through mistake on one side and fraud on the other, omitted some provision agreed upon, or inserted one not agreed upon." *(Curtis v Albee,* 167 NY 360, 364; *Chimart Assocs. v Paul,* 66 NY2d 570, 573; *Slutzky v Gallati,* 97 AD2d 561, *lv denied* 61 NY2d 602.)* Reformation is not a mechanism to interject into the writings terms or provisions not agreed upon or suggested by one party but rejected by the other. *(Schmidt v Magnetic Head Corp.,* 97 AD2d 151, 159.) Nor may it be used to relieve a party from "a hard or oppressive bargain." *(Backer Mgt. Corp. v Acme Quilting Co.,* 46 NY2d 211, 219.) The burden upon a party seeking reformation is a heavy one since it is presumed that a deliberately prepared and executed written instrument accurately reflects the true intention of the parties: "The proponent of reformation must show in no uncertain terms not only that mistake or fraud exists, but exactly what was really agreed upon between the parties." *(South Fork Broadcasting Corp. v Fenton,* 141 AD2d 312, 314, *lv dismissed* 73 NY2d 809.)

Of the grounds asserted in support of reformation, two of them, i.e., "mistake of plaintiffs" and "fraud", may be disposed of summarily since even the renewal/reargument court denied the motion to reargue the dismissal of the first cause of action of the second amended complaint sounding in fraud and deceit, thereby affirming the motion court's dismissal of the same. In any event, as already noted, reformation cannot be sustained on the ground of unilateral mistake alone. What is required is a showing of unilateral mistake induced by the other party's fraudulent representations. *(Kadish Pharmacy v Blue Cross & Blue Shield,* 114 AD2d 439, *lv dismissed* 68 NY2d 641.) There is no allegation here that the parties had reached an agreement, which, unbeknownst to plaintiffs but known to defendants, who had misled them, was not expressed in the subsequent writings. *(See, e.g., Chimart Assocs. v Paul, supra,* 66 NY2d, at 573; *Barash v Pennsylvania Term. Real*

*Estate Corp.,* 26 NY2d 77.) As for the claim of mutual mistake and scrivener's error, the second amended complaint fails to allege the existence of a single mistake, much less a mutual one, or to identify what was agreed upon that is not contained in the challenged writings.

The only allegations in support of the two reformation causes of action consist of totally irrelevant claims as to what the written agreements do or do not say. For instance, plaintiffs allege that "[t]he note and purchase money mortgage do not fully set forth that a breach of the [m]emorandum of agreement constitutes a breach of mortgage" and that "[n]either the [c]ontract nor the [m]emorandum of [a]greement fully sets forth that Kassis' obligation to pay for the business was absolute after Kassis acquired the premises." What is not alleged, as is required for reformation, is that the parties agreed and intended the contracts to reflect that which plaintiffs allege they do not.

In any event, the clear wording of the two agreements militates strongly against the claims now asserted. Plaintiffs cannot point to a single provision that contains even a hint that the parties intended the closing of title on the subject premises to be contingent on the consummation of the sale of the cosmetics business or that the failure to close on the sale of the cosmetics business constituted an event of default under the purchase-money note and mortgage. In fact, as the documents disclose, the parties had mutually agreed to the contrary. Most significantly, the memorandum of agreement for the sale of the business contained a cross-default provision which made a default by any party under the contract of sale for the subject premises a corresponding default thereunder as well. That the contract of sale did not contain a similar provision seems to us persuasive that the parties, sophisticated businessmen represented by counsel throughout the negotiation, drafting and execution of the agreements, never intended that one be included. *(Burnside Bargain Store v Carmel,* 156 AD2d 248, 249; *see also, Chimart Assocs. v Paul,* 66 NY2d 570, *supra.)*

Similarly, each agreement contains a liquidated damage clause setting forth the seller's agreed upon remedy in the event the purchaser breached the agreement. Neither clause makes reference to the other and, contrary to plaintiffs' unsupported claims, nothing in the language of the liquidated damage clause of the memorandum of agreement indicates that it was intended to be applicable only prior to November

21, 1989, the date of the closing of title of the subject premises. To the contrary, the clause expressly applies to the purchaser's default in "the performance of any of the terms of this contract," which imposed numerous obligations upon Kassis that had to be performed on or before the date of the closing on the sale of the cosmetics business, set in the memorandum of agreement for January 9, 1990, almost two months after the closing of title on the subject property.

It should also be noted that the contract of sale for the subject premises contains the standard provision that, except as otherwise provided, none "of the agreements, representations, warranties and provisions [therein] on the part of the [s]eller to be performed * * * shall survive closing of title and delivery of the deed". Nowhere in the contract did the parties provide for an exception with respect to any of the obligations under the memorandum of agreement. Moreover, none of the written instruments reveals an intention by the parties to include a cross-default provision in the contract of sale for the subject premises, purchase-money mortgage or note.

■ In light of the liquidated damage provision of the memorandum of agreement, which specifically forecloses any right the sellers might have to sue the purchaser for breach of that agreement, plaintiffs do not have a cause of action for money damages for breach of the memorandum of agreement as asserted in their second cause of action of the second amended complaint. Paragraph 2 (a) of the agreement provides, "Should the [p]urchaser default in the performance of any of the terms of this contract, then the money paid on account of this contract shall be, in view of the fact that the property has been kept off the market and the difficulty of ascertaining damages, retained by the [s]eller as liquidated damages, and this contract shall thereupon become null and void, and neither party shall have further rights against the other." It is not disputed that defendants paid $100,000, which plaintiffs have retained, on account of the $350,000 purchase price. The liquidated damage clause specifically provides that upon default and retention by the seller of the moneys paid on account the contract "shall thereupon become null and void" and that "neither party shall have further rights against the other." Clearly, there was no basis for reinstatement of this cause of action.

■ The fourth cause of action of the second amended complaint, which seeks foreclosure of the purchase-money mortgage given in connection with the sale of the subject

premises, is equally defective. A cause of action in foreclosure will not lie unless the mortgagor is in default under the terms of the mortgage. (RPAPL 1301 *et seq.; see,* Marks, Maloney and Paperno, Mortgages and Mortgage Foreclosure in New York § 160 [1975 rev ed].) The pleading in question fails to allege a single act or omission by defendants constituting a default under the contract of sale, purchase-money mortgage or note. All that is asserted is defendants' default "in concluding the purchase of the business, and paying their final installment of the purchase price thereof", which, as noted, is not a corresponding default under the purchase-money mortgage or note. Thus, nothing is asserted which would afford a right of foreclosure.

■ Defendants also appeal from the denial of their cross motion for sanctions. 22 NYCRR 130-1.1 (a) permits a court, in the exercise of discretion, to award costs in reimbursement of actual expenses reasonably incurred, as well as attorneys' fees, resulting from frivolous conduct, that is, conduct "completely without merit in law or fact and [which] cannot be supported by a reasonable argument for an extension, modification or reversal of existing law" (22 NYCRR 130-1.1 [c] [1]). In our view, plaintiffs' continued pursuit of this baseless litigation—on the basis of previously rejected claims—by seeking reargument/renewal of the dismissal of its third complaint in the action constitutes a clear case of frivolous conduct. After the dismissal of their original complaint, plaintiffs moved to reargue and then filed two more complaints reasserting the identical causes of action that had previously been dismissed. They filed two notices of appeal from the dismissals of the original and second amended complaints, the first of which they withdrew and the second of which they failed to perfect. Even after the dismissal of their second amended complaint and the filing of a second notice of appeal, they moved to reargue, presenting no new facts and relying upon the same previously rejected arguments. Moreover, they attempted to buttress their arguments by accusing the motion court of not having read the case law they cited and of having merely relied on portions of the headnotes of the cases it cited. Such *ad hominem* attack without the assertion of a proper basis for reargument/renewal justifies the imposition of a sanction. *(See, e.g., Jones v Camar Realty Corp.,* 167 AD2d 285, *appeal dismissed* 77 NY2d 939, *cert denied sub nom. Hanft v Camar Realty Corp.,* — US —, 112 S Ct 376.) In light of the extensive prior proceedings in the action, plaintiffs' pursuit of

this motion appears to be nothing more than a desperate attempt to salvage a baseless lawsuit.

The amount sought in sanctions, $3,341.30, representing the costs and expenses incurred in opposing plaintiffs' second motion to renew/reargue and in preparing the cross motion is supported by an appropriate evidentiary showing, which was not challenged, and appears fair and reasonable.

Accordingly, the order of the Supreme Court, New York County (Herman Cahn, J.), entered on or about October 9, 1991, which, *inter alia,* granted plaintiffs' motion to renew and reargue and which, upon reargument, reinstated the second, third and fourth causes of action and granted leave to replead the fifth cause of action to seek reformation of the underlying mortgage and note, should be reversed, on the law, with costs and disbursements, the motion denied and the cross motion for the imposition of financial sanctions in the sum of $3,341.30 granted.

CARRO, WALLACH and SMITH, JJ., concur.

Order of the Supreme Court, New York County, entered on or about October 9, 1991, is reversed, on the law, with costs and disbursements, the motion denied and the cross motion for the imposition of financial sanctions in the sum of $3,341.30 granted.