OPINION OF THE COURT
David B. Vaughan, J.
In this mortgage foreclosure action, plaintiff Bankers Trust Company of California, N. A., as trustee under the pooling and servicing agreement, December 11, 1997, Delta Funding Home Equity Loan Trust 1997-4, do Delta Funding Corporation (plaintiff), moves, pursuant to CPLR 2221 (d) and (e), for leave to reargue and renew its prior motion for summary judgment in its favor, striking the answer of defendant Errol E. Payne (defendant), appointing a Referee to compute, and foreclosing upon defendant’s property. Defendant cross-moves for an order, pursuant to Rules of the Chief Administrator of the Courts (22 NYCRR) § 130-1.1, awarding him reasonable expenses and the attorney’s fees incurred by him in defense of plaintiff’s instant motion, and imposing sanctions upon plaintiff and its counsel.
Defendant is a 74-year-old native of Trinidad and is the owner of the subject property, which is located at 463 Rutland Road in Brooklyn, New York, where he has resided for over 20 years. Defendant asserts that in early 1996 he was approached by a representative of Delta Funding Corporation (Delta), the servicing agent for plaintiff which is engaged in the business of issuing mortgage loans, and that such representative repeatedly solicited him to take out a $90,000 loan to reface his property. Defendant claims that due to the fact that certain documents appeared altered between the time that he reviewed them and the time that he executed them, he timely canceled that loan. Defendant states that he was then solicited by and secured a loan for $50,000 from FHB Lending Corporation (FHB). He claims that he only received $16,443.16 of this FHB loan, and that after he complained about this, he was contacted by a person who told him that he could retrieve the rest of the $50,000 loan, but only if he agreed to take out an additional $25,000 loan. Defendant asserts that he was then driven to an office where he met with a representative of Delta and was told that he was signing an application for a $25,000 loan. Defendant, in fact, signed a mortgage loan for $75,000.
*728 Defendant asserts that he did not receive funds from this $75,000 mortgage loan, and that he was shocked when he received a notice from Delta demanding that he make monthly payments of over $700 towards a $75,000 mortgage. He claims that he did not believe that he had signed mortgage closing documents and would never have knowingly taken such a large loan because he could not afford it. He states that, out of fear that he would lose his home, he made the monthly payments against the loan in a timely manner through December 1999.
The subject note and mortgage are dated November 6, 1997. They reflect a loan in the principal amount of $75,000, secured by defendant’s home, payable in monthly installments of $713.68 at the interest rate of 10.99% and at the default interest rate of 24%. Plaintiff brought this action on December 28, 1999, alleging that defendant has defaulted on the mortgage by failing to make monthly payments due on June 1999 through December 1999, and seeking foreclosure of the mortgage.
Plaintiff previously moved for summary judgment in its favor. In opposition, defendant asserted that he was defrauded in connection with the mortgage loan at issue, that Delta engaged in predatory loan practices, that he did not receive the funds from the loan, and that he had made timely payments under the mortgage up until the time that plaintiff commenced this foreclosure action against him. Plaintiff argued that it had demonstrated defendant’s default, and that defendant’s defenses were conclusory and baseless. In addition, in support of its claim that defendant received the loan proceeds, plaintiff submitted copies of checks, which allegedly constituted the disbursements of the mortgage proceeds. These checks, however, were not signed and not canceled, and only one of these checks, which is in the amount of $4,617.66, was made payable to defendant. Additionally, the detailed transaction history of defendant’s loan, submitted by plaintiff, reflected interest payments received by plaintiff from defendant on May 25, 1999, June 15, 1999, July 23, 1999, and August 24, 1999.
In view of the defenses raised by defendant and the existence of material and triable issues of fact, this Court, by order dated July 13, 2000, following oral argument and due deliberation, denied plaintiff’s motion (see, CPLR 3212 [b]). Plaintiff now seeks leave to reargue and renew its prior motion.
In addressing plaintiffs instant motion, the Court notes that the purpose of a motion for reargument is to afford a party an opportunity to demonstrate that the court overlooked or misap *729 prehended the law or facts pertinent to the original motion (CPLR 2221 [d] [2]; Foley v Roche, 68 AD2d 558, 567; American Trading Co. v Fish, 87 Misc 2d 193, 195). “Its purpose is not to serve as a vehicle to permit the unsuccessful party to argue once again the very questions previously decided” (Foley v Roche, supra, 68 AD2d, at 567; see also, Pahl Equip. Corp. v Kassis, 182 AD2d 22, 27; American Trading Co. v Fish, supra, 87 Misc 2d, at 195). Furthermore, “[a]n application for leave to renew must be based upon additional material facts which existed at the time the prior motion was made, but were not then known to the party seeking leave to renew, and, therefore, not made known to the court” (Foley v Roche, supra, 68 AD2d, at 568; see also, Silverman v Leucadia Inc., 159 AD2d 254, 255; Gulledge v Adams, 108 AD2d 950).
In support of its motion insofar as it seeks reargument, plaintiff argues that the court overlooked the fact that defendant has failed to introduce documentary evidence that he made payments of the monthly installments due after May 5, 1999, and that it is, therefore, entitled to summary judgment. Such argument is rejected. On a motion for summary judgment, the moving party has the burden to establish its cause of action sufficiently to entitle it to judgment as a matter of law; where the moving party fails to make a prima facie showing of its entitlement to such judgment as a matter of law, there is no necessity for the opposing party to respond with evidentiary proof and the motion must be denied (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853; Vitiello v Mayrich Constr. Corp., 255 AD2d 182, 183-184; Stelick v Gangl, 47 AD2d 789). Here, while the complaint alleges defendant’s failure to make interest payments from June to December 1999, defendant, as noted above, in his sworn affidavit, asserts that he made payments under the mortgage through December 1999, and plaintiffs own records, as reflected in the detailed transaction history of defendant’s loan submitted by it, appear to indicate interest payments received by it from defendant in May, June, July, and August 1999. Thus, plaintiff has failed to make a prima facie case establishing defendant’s default.
Plaintiff also reasserts its argument that defendant’s defense of fraud is merely conclusory and does not preclude summary judgment. This same argument was previously made by plaintiff in support of its original motion and rejected by the court. “Reargument is not designed to afford the unsuccessful party successive opportunities to reargue issues previously decided” (Pahl Equip. Corp. v Kassis, supra, 182 AD2d, at 27; *730 see also, Pro Brokerage v Home Ins. Co., 99 AD2d 971; Foley v Roche, supra, 68 AD2d, at 567). Moreover, defendant has submitted his sworn affidavit, detailing his defense of fraud. He specifically states that he relied upon misrepresentations made by Delta’s representative in executing the mortgage, thus asserting a cognizable defense of fraud (see, Joy v Brower, 107 AD2d 1028). Defendant also points out that there have been recent news articles regarding Delta’s “alleged ‘predatory’ lending practices [that] have caused many hundreds of homeowners in minority neighborhoods throughout the metropolitan area to go into default” (see, Howell, Delta Funding Faces Class Action/50,000 homeowners could join lawsuit, Newsday, Sept. 28, 2000, at A42, 2000 WL 10035911). Therefore, contrary to plaintiffs argument, defendant’s defense of fraud is not merely conclusory, but raises triable issues of fact herein.
In support of its motion insofar as it seeks renewal, plaintiff has now submitted signed and canceled copies of the checks allegedly disbursed as the mortgage loan proceeds. It states that these checks demonstrate that all of the mortgage loan proceeds were paid to defendant or on his behalf. Plaintiff has not offered any excuse as to why it was unable to produce these checks and only produced unsigned and uncanceled copies at the time of the original motion (see, CPLR 2221 [e] [3]; Riccio v Deperalta, 274 AD2d 384, 385; Binghamton Plaza v Fashion Bug #2470, 252 AD2d 870, 871). In any event, such checks, as noted above, only reflect the distribution of $4,617.06 to defendant. The balance of the checks, drawn by the law firm of the closing attorneys for plaintiff, are payable to other parties, and it has not been demonstrated that such disbursements were agreed to or authorized by defendant.
Moreover, in addition to the issues raised by defendant’s defenses of payment and fraud and the issues raised regarding the disbursement of the loan proceeds, defendant has raised a defense pursuant to the Home Ownership and Equity Protection Act of 1994 (15 USC § 1639 [the HOEPA]) which precludes the granting of summary judgment in favor of plaintiff (see, CPLR 3212 [b]). The HOEPA is an amendment to the Truth in Lending Act (15 USC § 1601 et seq. [the TILA]) which added consumer protections to that Act (see, Foster v EquiCredit Corp., 2001 WL 177188, *2, 2001 US Dist LEXIS 1881, *2 [ED Pa, Jan. 26, 2001, Tucker, J.]; Hargraves v Capital City Mtge. Corp., 140 F Supp 2d 7 [D DC 2000]; Newton v United Cos. Fin. Corp., 24 F Supp 2d 444, 451 [ED Pa 1998]; In re Williams, 232 Bankr 629, 635 [ED Pa 1999], affd as corrected and *731 remanded by Williams v Gelt Fin. Corp., 237 Bankr 590 [ED Pa 1999]). Congress enacted the HOEPA as an amendment to the TILA “to provide borrowers some protection from predatory loans” (Hargraves v Capital City Mtge. Corp., supra, 140 F Supp 2d, at 20).
Where a mortgage loan is a “mortgage” under the definition set forth in 15 USC § 1602 (aa) (1), it is subject to the requirements and restrictions of the HOEPA (15 USC § 1639). To qualify as a “mortgage” within the definition of 15 USC § 1602 (aa) (1), a mortgage loan must be a “consumer credit transaction” (see, 15 USC § 1602 [h]) with a “creditor” (see, 15 USC § 1602 [f¡), secured by the “consumer’s principal dwelling” (see, 15 USC § 1602 [v]), and must be a second or subordinate residential mortgage as opposed to a “residential mortgage transaction” (see, 15 USC § 1602 [w]), a “reverse mortgage transaction” (see, 15 USC § 1602 [bb]), or a transaction under an “open end credit plan” (see, 15 USC § 1602 [i]). Additionally, either the annual percentage rate of interest at consummation for the loan transaction must exceed certain levels (see, 15 USC § 1602 [aa] [1] [A]) or “the total points and fees” payable by the borrower at or before closing must exceed the greater of 8% of the total loan amount or $400 (see, 15 USC § 1602 [aa] [1] [B]).
Where a mortgage loan meets this definition and violates the provisions of the HOEPA, the mortgagor has a right to rescind the mortgage loan transaction pursuant to 15 USC § 1635 (see, 15 USC § 1639 |j]) and to receive the TILA statutory penalties pursuant to 15 USC § 1640 (a) (4) (see, Newton v United Cos. Fin. Corp., supra, 24 F Supp 2d, at 451). Such violation also constitutes a defense in a mortgagee’s foreclosure action against the mortgagor (see, Lopez v Delta Funding Corp., 1998 WL 1537755, *4-5 [ED NY, Dec. 23, 1998, Sifton, Ch. J.]).
Pursuant to 15 USC § 1639 (d), a mortgage loan may not provide for an increased rate of interest upon default, and, pursuant to 15 USC § 1639 (c), a mortgage loan may not contain a prepayment penalty, unless it falls within the limited exception in 15 USC § 1639 (c) (2). Additionally, a creditor violates the HOEPA if it “engage [s] in a pattern or practice of extending credit to consumers under mortgages referred to in section 1602(aa) * * * based on the consumers’ collateral without regard to the consumers’ repayment ability, including the consumers’ current and expected income, current obligations, and employment” (15 USC § 1639 [h]).
The mortgage note at issue specifies that after default the interest rate rises to 24%. It thus includes a provision for *732 an increased rate of interest upon default in violation of 15 USC § 1639 (d). It also contains a “prepayment rider” which authorizes a prepayment penalty of 5% of the loan principal, which constitutes a provision for a prepayment penalty in violation of 15 USC § 1639 (c) (1) (A). Furthermore, defendant claims that Delta did not ask him for verification of his income or otherwise certify the loan’s affordability, and, therefore, extended credit to him without regard to his repayment ability in violation of 15 USC § 1639 (h).
Thus, the mortgage loan at issue, on its face, contains violations of the HOEPA. In opposition to defendant’s argument regarding his defense under the HOEPA, plaintiff contends that such violations of the HOEPA are irrelevant because the mortgage loan does not meet the definition of a mortgage set forth in 15 USC § 1602 (aa) (1) and is, therefore, not subject to the requirements of the HOEPA. In addressing this contention, the court notes that it is undisputed that plaintiff is a “creditor” within the meaning of 15 USC § 1602 (f). Additionally, the mortgage loan was taken to pay off an existing loan from another lender and for refacing work on defendant’s home. It thus constituted a second or subordinate mortgage loan and involved a “consumer credit transaction” (see, 15 USC § 1602 [h]). In addition, since the mortgage broker, Allstate Consultants, was paid a fee of $6,375 or 8.5% of the loan principal, the total points and fees defendant paid at or before closing exceeded 8% of the total loan amount (see, 15 USC § 1602 [aa] [1] [B] [i]).
Plaintiff argues, however, that the loan was not secured by defendant’s principal dwelling because the term “dwelling” is defined in 15 USC § 1602 (v) as a “residential structure * * * which contains one to four family housing units.” It asserts that at the time defendant applied for the loan, the premises contained five units. In support of this assertion, plaintiff has submitted the Small Residential Income Appraisal Report of C.P. Appraisals, Inc., which reflects that in addition to the four family housing units, the premises contained a restaurant/club on the first level. This report, however, states that the restaurant/club was “non-functioning.” Defendant has submitted a printout from the New York City Department of Housing Preservation and Development, reflecting that his home is, in fact, legally registered as a four-family building. Thus, there is no evidence that the building at issue was ever registered as other than a four-family dwelling and the appraiser’s report does not establish that at the time of the loan, the building *733 was being used for commercial purposes or that there was an illegal commercial fifth unit in operation at such premises.
Moreover, as noted above, the definition of “dwelling” under 15 USC § 1602 (v) only requires that the dwelling be a residential structure “containing] one to four family housing units.” There is no further requirement or exemption specified therein. The building at issue did contain four family housing units, and the loan was not taken for a business or commercial purpose. Additionally, the subject mortgage itself states on page 3 thereof that it “covers real property principally improved by a one to four family dwelling” and the assignment of the mortgage from Delta to Bankers Trust Company of California, N. A. expressly states that “[t]his is a mortgage subject to special rules under the Federal Truth in Lending Act.”
Plaintiffs further argument that defendant’s defense under the HOEPA must be rejected because he did not assert it as an affirmative defense in his answer is devoid of merit. Defendant’s answer expressly asserted as an affirmative defense that plaintiffs claims are barred by its failure to comply with the provisions of the TILA. As noted above, the HOEPA is an amendment to the TILA (see, Newton v United Cos. Fin. Corp., supra, 24 F Supp 2d, at 451). The HOEPA employs the TILA’s definitions and rules of construction (see, 15 USC § 1602) and explicitly provides that violation of its special protection provisions entitles consumers to rescind mortgage loans and to recover the TILA statutory penalties (15 USC § 1639 |j]; § 1640 [a] [4]). Thus, defendant has sufficiently pleaded this defense. In any event, it is noted that even an unpleaded defense may be used to resist a summary judgment motion (see, Rizzi v Sussman, 9 AD2d 961).
Plaintiffs additional argument that it is entitled to summary judgment because defendant ratified the mortgage loan by making monthly mortgage payments is also without merit. Such payments do not vitiate defendant’s defense based upon violations of the HOEPA (see, Newton v United Cos. Fin. Corp., supra, 24 F Supp 2d, at 451-454).
Consequently, inasmuch as plaintiff has failed to show that the court overlooked or misapprehended the law or facts and since it is merely attempting to rehash questions already decided by the court, it has failed to set forth a valid basis for reargument (see, Foley v Roche, supra, 68 AD2d, at 567; American Trading Co. v Fish, supra, 87 Misc 2d, at 195). Plaintiff also has not presented any additional material facts which establish a valid basis for renewal (see, Silverman v Leucadia *734 Inc., supra, 159 AD2d, at 255; Foley v Roche, supra, 68 AD2d, at 568).
Accordingly, plaintiffs motion for reargument and renewal is hereby denied. Defendant’s cross motion, pursuant to Rules of the Chief Administrator of the Courts (22 NYCRR) § 130-1.1, for an award of reasonable expenses and attorney’s fees, and the imposition of sanctions upon plaintiff and its counsel, is also denied as the Court finds that plaintiff has not engaged in such “frivolous conduct” as to warrant this relief herein (see, Rules of Chief Administrator of Courts [22 NYCRR] § 130-1.1 [a], [c]).