**Shanghai Pearls & Gems, Inc. v Paul**

2024 NY Slip Op 34454(U)

December 20, 2024

Supreme Court, New York County

Docket Number: Index No. 157224/2022

Judge: Dakota D. Ramseur

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    <u>HON. DAKOTA D. RAMSEUR</u>          PART          34M

                                    *Justice*

------------------------------------------------------------------------X

SHANGHAI PEARLS & GEMS, INC. D/B/A ULTIMATE
DIAMOND CO.,

|  |  |
|---|---|
| INDEX NO. | 157224/2022 |
| MOTION DATE | 09/11/2023 |
| MOTION SEQ. NO. | 002 |

                              Plaintiff,

                         - v -

ALEKS PAUL, ESSEX GLOBAL TRADING, INC.

                              Defendant.

------------------------------------------------------------------------X

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51

were read on this motion to/for          <u>RENEW/REARGUE/RESETTLE/RECONSIDER</u>          .

In its Decision and Order dated August 9, 2023, the Court resolved defendant Aleks Paul (hereinafter, "Paul") and Essex Global Trading, Inc.'s ("Essex") (collectively, "defendants") motion to dismiss plaintiff Shanghai Pearls & Gems, Inc. d/b/a Ultimate Diamond Co.'s causes of action for fraudulent conveyance under §§ 273 and 276-a of New York Debtor-Creditor Law, conversion, tortious interference with contractual relations, and unjust enrichment claims. Therein, the Court determined that defendants' documentary evidence did not establish a defense to plaintiffs' claims and that the doctrine of *res judicata* did not bar plaintiff from asserting this action. (*See* NYSCEF doc. no. 34, <u>Decision and Order dated 8/9/23</u>.) In this motion sequence (002), defendants move pursuant to CPLR 2221 (d) to reargue the Court's Decision, contending that it misconstrued applicable case law that should have resulted in dismissal of the entire action. Plaintiff opposes the motion in its entirety. For the following reasons, the Court grants defendants' motion to reargue, and upon reargument, the Court vacates the portion of its decision that declined to dismiss this action.

For purposes of this motion, the relevant facts are undisputed. In 2015, plaintiff and non-party D&M Capital Group LLC ("D&M") purchased the "Pink Diamond" as partners with another entity, each with a one-third interest. Thereafter, Aleks Paul and Essex, of whom Paul is the principal owner, loaned D&M approximately $6.5 million using several gems as collateral for the loan. According to plaintiff, D&M transferred to Essex both the Pink Diamond and another gem "Kashmir Sapphire"—together purportedly worth in excess of $17 million—to Paul and Essex without valuable consideration and in an attempt to shield these assets from D&M's creditors. (NYSCEF doc. no. 7 at ¶ 18, <u>amended complaint</u>.) In May 2019, D&M filed for bankruptcy in the Southern District of New York. (*See In re The D&M Capital Group, LLC*, Index No. 19-11711; *see also* NYSCEF doc. no. 18, <u>D&M's petition for bankruptcy</u>.) In June that same year, D&M's BankruptcyTtrustee instituted an action against Paul and Essex in an effort to recover, among other stones, Pink Diamond and Kashmir Sapphire. (NYSCEF doc. no.

**157224/2022   SHANGHAI PEARLS & GEMS, INC. D/B/A ULTIMATE DIAMOND CO. vs. PAUL,**                **Page 1 of 5**
**ALEKS ET AL**
**Motion No.  002**

1 of 5

[* 1]

13, D&M/Essex adversary proceeding docket; NYSCEF doc. no. 17, D&M amended complaint against Essex.) Specifically, the Trustee sought to reverse the sale of these stones to Essex on grounds that they were "fraudulent transfers" of D&M's property and under theories of liability for conversion and unjust enrichment. (*See* NYSCEF doc. no. 17 at ¶¶ 128, 224, and 228.) On March 1, 2021, the D&M Trustee, Paul, and Essex entered into a settlement agreement, under which (1) all of D&M's claims against Essex and Paul were dismissed "with prejudice," (2) Essex's $6.5 million dollar proof of claim for its loan would be subordinated to all other allowed claims, (3), Essex transferred ownership interest to Pink Diamond and Kashmir Sapphire, and (4) Essex would pay D&M $350,000. (NYSCEF doc. no. 15 at ¶¶ 5-6, D&M/Essex settlement agreement.) Per the agreement, the Trustee "release[d], remise[d], and discharge[d] Essex and Paul, and each of their heirs, attorneys, agents, successors and assigns, from any and all past, present or future Claims or causes of action… based on, arising out of, or relating in any way to the Items." (*Id*. at ¶ 7.) The Bankruptcy Judge overseeing the case approved the settlement on June 8, 2022, without objection (NYSCEF doc. no. 22, court order.) In addition, paragraph 13 (entitled "Successors") provides "This agreement is binding on the Parties' successors, transferees, heirs, attorneys, agents, and *assigns*" (*Id*. at ¶ 13 [emphasis added].)

On April 28, 2022, the Trustee entered into a separate settlement agreement with plaintiff. (NYSCEF doc. no. 14, D&M/Plaintiff settlement.) Pursuant to ¶ 3, plaintiff agreed to withdraw Claims 4-3, 4-19, and 20-2 (claims worth, respectively, $4,178,195.58, $62,642.63, and $19,843.32) in return for D&M's assignment of its right, title, and interest to Kashmir Sapphire (by this point a 100% interest) and Pink Diamond to it. (*Id*. at ¶3 [a]-[b].) Under the agreement, while neither D&M nor plaintiff "waive[d] any claims or defenses as to persons not parties to the agreement" (*id*. at ¶ 4), D&M's fraudulent conveyance and conversion claims were not assigned to plaintiff, since, as described above, those claims were extinguished pursuant to Essex's settlement. Lastly, approval of plaintiff's settlement was conditioned on the approval of the D&M/Essex settlement agreement (and plaintiff's withdrawal of its objection to said agreement). (*Id*. at ¶ 5.)

Plaintiff commenced this action against Paul and Essex in August 2022, asserting causes of action under New York Debtor-Creditor Law §§ 273 and 276, conversion, fraudulent inducement, and unjust enrichment. Defendants then moved for dismissal under CPLR 3211 (a) (1), (a) (5), and (a) (7).

In resolving the motion, the Court first found that defendants were not entitled to dismissal under 3211 (a) (1) and (a) (5) based on documentary evidence and the doctrine of *res judicata*, reasoning that the D&M/Essex settlement did not (1) release them from any claims brought by plaintiff and (2) defendants had not cited specific litigation between the two parties prior to the commencement of this suit that could serve as the underlying predicate "valid final judgment." (NYSCEF doc. no. 34 at 4.) It further held that plaintiff's conversion claims were not time barred by the statute of limitations as the bankruptcy proceeding stayed all proceedings against D&M, including those affecting D&M property. (*Id*.) The Court, however, did dismiss plaintiff's unjust enrichment claim as duplicative of its sufficiently pled tortious interference with contractual relations claim. (*Id*. at 5.)

**157224/2022   SHANGHAI PEARLS & GEMS, INC. D/B/A ULTIMATE DIAMOND CO. vs. PAUL, ALEKS ET AL**
**Motion No.  002**

**Page 2 of 5**

2 of 5

## DISCUSSION

"A motion for leave to reargue ... serves to offer a party the chance to demonstrate that the court overlooked or misunderstood the pertinent facts or failed to properly apply the relevant legal principles (CPLR 2221 [d] [2]). Reargument is not designed to afford the unsuccessful party successive opportunities to reargue issues previously decided or to present arguments different from those originally asserted." (*William P. Pahl Equip. Corp. v Kassis*, 182 AD2d 22, 27 [1st Dept 1992] [internal citations and quotation marks omitted].) Nor is a motion to reargue designed to afford unsuccessful parties the opportunity to present alternative positions, new theories of the case, or arguments different from those originally asserted. (*Foley v Roche*, 68 AD2d 558, 547 [1st Dept 1979], *Matter of Settlers v AI Props & Devs (USA) Corp*, 139 Ad3d 492, 492 [1st Dept 2016].) At its sound discretion, the court that decided the prior motion retains the authority to grant or deny reargument motions, and the moving party bears the burden of demonstrating to the Court that it misapprehended or overlooked matters of fact or law. (*Loland v City of New York*, 212 AD2d 674, 674 [2d Dept 1995].)

Under CPLR 3211 (a) (5), a party may move for judgment dismissing one or more causes of action under the doctrine of *res judicate*. This doctrine, or claim preclusion, prevents parties from relitigating causes of action arising out of the same transaction or series of transactions that were either raised or could have been raised in the prior proceeding. (*Rojas v Romanoff*, 186 AD3d 103, 108 [1st Dept 2020].) The moving party must demonstrate the presence of a valid final judgment in a previous action and that the current claims arise out of those same transactions. (*See O'Brien v City of Syracuse*, 54 NY2d 353, 357 [1981]; *Waldman v Village of Kiryas Joel*, 39 F Supp 2d 370, 377 [SDNY 1999] ["Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first"].) Here, upon reargument, the Court now acknowledges that it did not properly apply the doctrine of *res judicata* in its previous Decision.

Paul and Essex have demonstrated that (1) D&M commenced the bankruptcy adversarial proceeding against them in 2021—prior to plaintiff's assertion of a proof of claim—for fraudulent conveyance and conversion, (2) the basis for the adversarial proceeding concerned Essex's, D&M's, and plaintiff's respective interests in Pink Diamond and Kashmir Sapphire viz a viz D&M's obligations under the $6.5 million loan, (3) in the court-approved D&M/Essex settlement, D&M dismissed the asserted causes of action and released the Essex Defendants from "any and all past, present or future Claims or causes of action" arising out of the two gems, (4) paragraph 13 bound the parties' assigns, (5) plaintiff had an opportunity to oppose the settlement, which it, in fact, did, and (6) in its own settlement agreement, plaintiff received, as an assignment, D&M's entire interest in Pink Diamond and Kashmir Sapphire.

In holding *res judicata* inapplicable, the Court's previous Decision limited its analysis to whether the parties had asserted claims against each other and, in so doing, failed to appreciate the fact that the doctrine of *res judicata* may be asserted against non-parties who stand in privity to the party against whom the judgment was rendered. (*See Gramatan v Home Investors Corp. v Lopez*, 46 NY2d 481, 486 [1979] [holding that it is "well settled" that an unity of parties is not

**157224/2022   SHANGHAI PEARLS & GEMS, INC. D/B/A ULTIMATE DIAMOND CO. vs. PAUL, ALEKS ET AL**
**Motion No.  002**

**Page 3 of 5**

3 of 5

necessary to invoke the doctrine but that privity between the original and successor party—or a "mutually successive relationship of the same rights to the same property"—is required to permit the utilization of collateral estoppel against persons who were not party to the previous action]; *see also Rojas v Romanoff*, 186 AD3d 103, 108 [1st Dept 2020].) Thus, as laid out in *Lopez*, for collateral estoppel purposes, an assignee—like plaintiff—"is deemed to be in privity with the assignor where the action against the assignor is commenced before there has been an assignment." The same principle holds in the context of bankruptcy. For example, in *Cho v Seventh Ave. Fine Foods Corp.* (2016 US Dist. LEXIS 56603 at * 7 [SDNY 2016]), the Southern District of New York applied the doctrine where (1) a plaintiff asserted fraudulent conveyance claims against not only their adversary in the bankruptcy proceeding but also the successors in interest to that party (2) after the bankruptcy court had approved the trustee's settlement to discharge those very same claims. Here, the same application holds: plaintiff has asserted fraudulent transfer and conversion claims against defendants, even though it is a successor in interest to D&M, D&M fully litigated those claims, and the Court approved the D&M/Essex settlement which dismissed them.

Plaintiff argues that *res judicata* cannot be applied here because the bankruptcy stay prevented creditors from asserting direct claims against each other, meaning that plaintiff and defendants were merely co-defendants together. It further challenges the preclusive effect of the D&M/Essex settlement because the "D&M Estate lacked a strong incentive to press fraudulent conveyance claims vigorously, since to do so would tent to implicate D&M's principals in contriving the conveyances." (NYSCEF doc. no. 50 at 7.) Neither argument has merit. First, the documentary evidence that defendants have submitted—the docket from D&M's adversarial proceeding and the D&M/Plaintiff settlement agreement—demonstrates that, even though no direct claims were asserted against each other, the parties took the requisite adversarial position in the bankruptcy proceeding that *Rojas v Romanoff* (186 AD3d at 110) describes as being sufficient to apply *res judicata*. In other words, both the relationship between the parties, with plaintiff and Essex disputing ownership over the two diamonds, and the manner in which plaintiff represented itself in the bankruptcy proceeding, i.e., by opposing the D&M/Essex settlement, point towards the fact that plaintiff was in privity with D&M and had an opportunity to litigate the claims being asserted therein. As to its second argument, in the complaint, plaintiff has not alleged any facts which would demonstrate that the trustee was complicit in the fraudulent conveyance to invoke the *Wagoner* rule. (*See Shearson Lehman Hutton, Inc. v Wagoner*, 944 F2d 114 [2d Cir. 1991].) Even so, the present action cannot be the venue to dispute the trustee's capacity to litigate on behalf of D&M.

Accordingly, for the foregoing reasons, it is hereby

ORDERED that the motion for leave to reargue the Court's Decision and Order dated August 9, 2023 pursuant to CPLR 2221 (d) is granted, and upon reargument, the Court vacates the branch of its Decision that denied defendants Aleks Paul and Essex Global Trading, Inc.'s motion to dismiss; and it is further

ORDERED that, upon reargument, defendants' motion to dismiss plaintiff Shanghai Pearls & Gems, Inc. d/b/a Ultimate Diamond Co.'s claims under DCL §273 and §276-a, for

**157224/2022   SHANGHAI PEARLS & GEMS, INC. D/B/A ULTIMATE DIAMOND CO. vs. PAUL, ALEKS ET AL
Motion No.  002**                                                                                 **Page 4 of 5**

4 of 5

[* 4]

conversion, and for tortious interference with contractual relations pursuant to CPLR 3211 (a) (1) and (a) (5) is granted and the complaint is dismissed; and it is further

ORDERED that counsel for plaintiff shall service a notice of entry along with a copy of this Decision and Order, on all parties within ten (10) days of entry.

This constitutes the Decision and Order of the Court.

20241220161014DRAMSEUR6AA39C54190045108F0B033FFFD5AD3B

| __12/20/2024__ | | | | | |
|---|---|---|---|---|---|
| __DATE__ | | | __DAKOTA D. RAMSEUR, J.S.C.__ | | |
| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
| | X | GRANTED | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

__157224/2022   SHANGHAI PEARLS & GEMS, INC. D/B/A ULTIMATE DIAMOND CO. vs. PAUL, ALEKS ET AL__
__Motion No.  002__

Page 5 of 5

5 of 5