[891 NYS2d 636]

Donna Rosado, Plaintiff, v A & P Food Store et al., Defendants.

Supreme Court, Westchester County, December 14, 2009

## APPEARANCES OF COUNSEL

*Boeggeman, George & Corde, P.C.*, White Plains (*Karen A. Jockimo* and *Richard G. Corde* of counsel), for defendants. *Jay S. Hausman & Associates, P.C.*, Hartsdale (*Elizabeth M. Pendzick* of counsel), for plaintiff.

## OPINION OF THE COURT

ALAN D. SCHEINKMAN, J.

Order to show cause by defendants for an order allowing defendants to designate a new physician to examine plaintiff based upon the recent unavailability of defendants' previous physician, who has moved out of state, and compelling plaintiff to appear for a further physical examination by defendants' designated physician at least 60 days prior to trial; and cross motion by plaintiff pursuant to CPLR 2221 for leave to renew and/or reargue her motion to compel depositions and discovery, and, upon reargument and/or renewal, an order compelling said depositions and discovery.

It is ordered that the application and cross motion are decided as follows:

Defendants' Order to Show Cause

In this personal injury action, plaintiff allegedly sustained injuries to her lumbar spine and ankle when she tripped on an open "drain" hole in the recycling room of defendants' store. Defendants now seek to designate a new physician to examine plaintiff and seek an order compelling plaintiff to appear for a further orthopedic examination. A note of issue has been filed in this case and the matter is ready for trial, but for the issues raised on the present motion and cross motion.

It is undisputed that plaintiff submitted to an examination by both a neurologist and an orthopedist designated by defendants and defendants timely provided the reports of these examinations and the expert information required by CPLR 3101 (d).

Defendants' counsel now avers that he has been advised that the orthopedist who previously examined plaintiff, submitted a report, and was noticed pursuant to CPLR 3101 (d), Dr. Ralph Purcell, retired, moved to Arizona and is not willing to return to New York to testify at trial. Plaintiff opposes the application and contends that defendants have failed to demonstrate

unusual circumstances to justify a further physical examination. Plaintiff asserts that defendants may obtain an open commission and subpoena the witness for trial in New York. Plaintiff notes that defendants also had plaintiff examined by a neurologist and contends that it would be inequitable to submit plaintiff to a third physical examination insofar as she already had to take time off from work to attend the first two physical examinations by defendants' physicians.

Counsel for defendants reports that he "received word" from Dr. Purcell in August 2009 that he would be leaving the New York metropolitan area due to health issues and that Dr. Purcell made clear that he would not be returning to New York for trial testimony. Counsel for defendants indicates that he believes that the health issues referenced by Dr. Purcell pertain to the physician's wife, rather than the physician himself. Counsel states that, while Dr. Purcell advised that, while he may return to the New York metropolitan area from time to time, those visits would take place only on weekends and that the physician did not anticipate participating in videotaped testimony. Plaintiff's counsel does not refute these assertions, stating that, while the circumstances may be "regrettable for defendants," the circumstances do not warrant plaintiff submitting to a further examination. Plaintiff's counsel also asserts that what makes plaintiff's injury "so serious" is her neurological sequelae and that defendants' neurologist is available to testify.

There is no question that defendants' application has been timely made. Defense counsel wrote to plaintiff's counsel on September 16, 2009 to seek consent for a new orthopedic examination but that request was summarily rebuffed on September 22, 2009. Efforts to resolve the dispute by conference failed and the present motion by defendants was brought on October 13, 2009.

Neither plaintiff nor defendants, on this motion, have submitted the complaint, the bill of particulars or plaintiff's medical reports. Accordingly, the court cannot make any assessment of the claim by plaintiff's counsel that plaintiff's injuries are primarily neurological in nature. Defendants' neurologist reported that plaintiff demonstrated a "normal neurological exam" except for voluntary restriction in motion and some sensory findings over the left foot which appear at times to be nonanatomical and nonphysiological. Dr. Purcell, defendants' orthopedist, found that plaintiff had a resolved left ankle/left foot sprain, "Status post multiple sympathetic blocks, lumbar

spine," and a left calcaneal spur. Since plaintiff's reports are not before the court, the court cannot ascertain what findings plaintiff's experts made.

In early September 2009, this court presided over a week-long special calendar call of cases in which notes of issue had been filed. On a considerable number of occasions, counsel for the parties reported that Dr. Purcell, who apparently conducted orthopedic examinations for litigation purposes on a regular basis, had retired and closed his practice due to a health condition of his spouse. It was reported that Dr. Purcell had moved to Arizona. In several of these cases, it was agreed that a further examination would be permitted by a different orthopedist. In other cases, such as this one, there was no agreement to a further examination and several motions are pending before this court in which further examinations are sought by court order. This decision reflects this court's first decision on the several motions involving the situation presented by Dr. Purcell and the court has carefully reviewed the governing statute and applicable case law.

Although there is no restriction in CPLR 3121 (a) on the number of examinations to which a party may be subjected, once an examination has been conducted, an additional examination shall be permitted only where the party seeking the examination demonstrates that it is necessary (*Rinaldi v Evenflo Co., Inc.*, 62 AD3d 856 [2d Dept 2009]; *Schissler v Brookdale Hosp. Ctr.*, 289 AD2d 469 [2d Dept 2001]). Moreover, if a party is seeking an additional examination after the note of issue has been filed, as here, the party must demonstrate that "unusual and unanticipated circumstances developed subsequent to the filing of the note of issue to justify an additional examination" (*Schissler v Brookdale Hosp. Ctr.* at 470; *Futersak v Brinen*, 265 AD2d 452 [2d Dept 1999]; *see* 22 NYCRR 202.21).

There is a relative paucity of case law dealing with the propriety of ordering a second examination due to the unavailability of the first examining physician at trial. In *Nathanson v Johnson* (126 AD2d 475 [1st Dept 1987]), the appellate court, reversing the court below, held that defendants should be permitted to conduct further examinations by a dentist and a neurologist, notwithstanding that plaintiff had been examined by a general and orthopedic surgeon designated by defendants. Defendants' designated expert had died and his examination took place despite plaintiff's failure to present any hospital records or X rays for his review. Further, plaintiff later submitted

medical and hospital records which confirmed the need for further examination by dental and neurological specialists. While the appellate court noted that the physician who conducted the earlier examination had died, it did not specifically reference this fact in concluding that further examinations should be allowed. Rather, the appellate court more generally cited "the particular circumstances herein presented" as well as the amount of damages (over $2 million) sought in the action (126 AD2d at 477).

In *Romero v City of New York* (272 AD2d 599 [2d Dept 2000]), the Appellate Division had reversed a judgment for plaintiff, concluding that it was error for the trial court to grant a reasonable adjournment of the trial so that defendants' examining physician could testify upon his return from Switzerland a few days later. Following remand, a second trial was scheduled for late August or early September 1999. However, defendants' counsel requested that plaintiff be ordered to submit to a further examination as the physician was then on a teaching sabbatical in Switzerland and defendants would have to pay him an exorbitant sum in order to have him appear for the scheduled trial. The trial court granted the application, but the Appellate Division reversed. It held that there was no evidence as to when defendants' counsel tried to arrange for the physician's trial appearance; the record indicated that the physician needed only two weeks' notice and could have been available within a few days. The Appellate Division ruled that, in either situation, "the proper resolution would have been to adjourn the trial until [the physician] could appear" (272 AD2d at 600). As to the claim that defendants would have to pay an exorbitant fee, the appellate court stated that there was no evidence that the physician's fee schedule had changed and the allegation of unspecified travel expenses was not sufficient to warrant a further examination. Any prejudice, ruled the court, was attributable to defendants' own failure to establish a reasonable fee initially and to timely ascertain the physician's availability.

In *Korolyk v Blagman* (89 AD2d 578 [2d Dept 1982]), defendant had arranged to have plaintiff examined by a physician in Delaware, which was where plaintiff resided. After the filing of the note of issue and only 2¹/₂ months after the first examination, defendant moved to compel plaintiff to submit to an examination by a physician in Nassau County, where the action was pending. The Second Department affirmed the denial of the motion, pointing out that, when a physician is selected to perform

an examination for purposes of litigation, there is a clear understanding and expectation that the physician will be available to testify on behalf of the party on whom the examination is conducted. The court also noted the concession of defense counsel that Delaware was not a far distant state and that the travel time was "not that great" (89 AD2d at 579).

Finally, in *Kaygorodov v Reynberg* (2003 NY Slip Op 51053[U] [App Term, 2d & 11th Jud Dists 2003]), the Appellate Term dealt with a situation where defendants' examining physician conducted an examination in January 1999 and gave written notice to defense counsel in July 1999 that the physician would be retiring and would not appear for testimony. But it was not until February 2002, more than two years later, that defense counsel moved for a further examination. The two-judge majority deemed the $2^1/2$-year delay to be a waiver of defendants' rights. The majority also stated that, even if it was assumed that the letter notifying defense counsel of the physician's retirement was sufficient grounds for further examination, there was no claim that the practice, which included three other doctors, was no longer in existence and that the medical records were no longer available. A dissenting justice concluded that defendants had met their burden of showing the necessity for an additional, post-note examination.

Applying these principles to the matter at hand, this court concludes that the abrupt retirement, and relocation out of state, of Dr. Purcell, which occurred after the filing of the note of issue, was an unanticipated circumstance warranting a further physical examination of plaintiff. Dr. Purcell conducted his examination of plaintiff on May 4, 2009 and there was no reason for defendants or their counsel to perceive, at the time of the examination, that Dr. Purcell would not be available to testify. The circumstances necessitating Dr. Purcell's retirement and departure from New York State occurred later and are attributable to a medical condition of Dr. Purcell's spouse.

While Dr. Purcell's report and curriculum vitae reflect that he was associated with Advanced Orthopedics, P.C. of Tarrytown, New York, there is no indication that any other physicians are associated with that entity or that such entity is still in operation. While Dr. Purcell's report is available, obviously defendants would not be able to introduce it into evidence in the absence of Dr. Purcell.

This court does not have the authority to direct an out-of-state witness to appear to testify at trial (*Matter of Carroll v*

*Gammerman*, 193 AD2d 202 [1st Dept 1993]). Judiciary Law § 2-b (1) provides that a court "has [the] power . . . to issue a subpoena requiring the attendance of a person found in the state to testify in a cause pending in that court," but does not grant the court the power to direct a person who is out of state to appear to testify.

It is true, as plaintiff's counsel suggests, that defendants could try to encourage Dr. Purcell to appear voluntarily. But *Romero v City of New York* (272 AD2d 599 [2000]), previously discussed, holds that the trial must be adjourned for a reasonable time to permit Dr. Purcell to attend. Since it appears that efforts to convince Dr. Purcell are likely to take considerable time (and may well be futile), a lengthy delay in the trial will actually prejudice plaintiff by protracting the delay in the trial of this case. In this regard, the court notes that, since Dr. Purcell examined numerous plaintiffs in other cases, if this court were to order this trial adjourned until Dr. Purcell could be produced at a time convenient to him, an unfortunate precedent would be set which could lead to lengthy delays in other cases. Moreover, it seems clear that the more times Dr. Purcell is asked to leave his apparently ill spouse in Arizona to come to New York during the business week to testify, the less likely he will be willing to do so. Further, Arizona is surely a distant state, being on the other side of the country, and the distances involved are substantial.

While a possible solution would be to arrange a video conference session whereby Dr. Purcell gives testimony in Arizona (and the attorneys are either present in Arizona or by video from New York), it seems unlikely that the parties will consent to that arrangement—plaintiff's counsel certainly does not offer it as an acceptable alternative. Further, there would undoubtedly be delay and expense involved, not to mention possible issues relating to having documents readily available for use on examination and cross-examination. A judge would either have to be present, or would have to review the videotape prior to use at trial, in order to rule on objections. Such an arrangement would also require Dr. Purcell's consent. Again, the more times Dr. Purcell is asked to participate in such a process, the less likely it is that he will agree.

It is possible that a court in Arizona could compel Dr. Purcell to give testimony in Arizona. While an open commission may be issued by this court, it can only serve as the basis for a subpoena issued by a court in another state for testimony to be taken

within that state (*see* 16 Ariz Rev Stat Rules Civ Proc, rule 30 [h] [Arizona statute permits court to issue subpoena directing a person to appear in Arizona for deposition testimony in an action pending in another state]; *cf.* CPLR 3102 [e]). The process for issuing an open commission and then seeking the assistance of the Arizona court to compel the testimony in Arizona of Dr. Purcell will add additional expense and will be time consuming, resulting in a delay of the trial, to plaintiff's prejudice.

It is unclear whether plaintiff intends to call an orthopedist to testify on her behalf. If plaintiff does so, defendants will be prejudiced as they will be unable to present the opinion of their designated orthopedist, through no fault of their own. The interests of justice would, in the opinion of this court, be furthered by allowing this case to remain on the trial calendar but requiring plaintiff to submit to a further examination, provided that it is done promptly and the report thereof is provided promptly (*see D'Amico v Nuzzo*, 122 AD2d 246 [2d Dept 1986]). This approach will obviate the prejudice to plaintiff in delaying the trial for a possibly lengthy period of time.

The only prejudice cited by plaintiff's counsel in her opposing affirmation is the prospect that the plaintiff would have to take time off from work to attend the examination. To address this prejudice, the court will direct that, as a condition of requiring a further examination, defendants pay directly to plaintiff the sum of $300 at the time of the examination, which appears to this court to be reasonable, if not generous, compensation for the loss of earnings (or for plaintiff having to use vacation, sick days or other personal time) and for the inconvenience.

Additionally, if plaintiff does not intend to call an orthopedic expert at trial and intends to call only a neurologist as her expert, then it would appear that a further examination by an orthopedist by defendants is not necessary as defendants' neurologist is still available. Therefore, if plaintiff gives a binding commitment to only call a neurologist as her medical expert on damages, the court will deny defendants' application for a further orthopedic examination.

In view of the foregoing, defendants' application is granted to the extent indicated and is otherwise denied. Plaintiff is directed to appear for a further physical examination by defendants' designated orthopedist on or before January 15, 2010, on condition that: (1) defendants schedule the further examination to accommodate plaintiff's work schedule; (2) defendants shall pay directly to plaintiff the sum of $300 at the time she appears at

the examination; (3) a further examination by defendants' designated orthopedist shall not be conducted in the event that plaintiff stipulates, prior to the holding of the examination, that plaintiff will call at trial only a neurologist as a medical expert on the issue of damages; and (4) defendants serve the report of their designated physician within 10 days of the examination.

## Plaintiff's Cross Motion

Plaintiff's cross motion seeks leave to renew and/or reargue her prior motion to compel defendants to produce certain discovery and, upon such renewal and reargument, for an order compelling certain depositions and discovery. The prior motion which is the subject of the present cross motion was decided by Honorable Francis A. Nicolai, by decision and order dated September 14, 2009. Since the rendition of the prior order, Justice Nicolai has been permanently reassigned from the Supreme Court, Westchester County, to the Supreme Court, Putnam County, effective as of January 4, 2010 and has already undertaken assignments in Putnam County. All cases presently pending before Justice Nicolai in Westchester County are in the process of being reassigned to other justices. Furthermore, subsequent to the submission date of the prior motion, the civil protocols of Supreme Court, Westchester County, have been revised and all discovery motions are heard in the Compliance Part, where this court presides.

This court has consulted with Justice Nicolai and was informed that, if this court did refer the subject cross motion to Justice Nicolai, he would decline the reference as he would be unable to render a decision in a timely manner. Justice Nicolai is the only full-time Supreme Court Justice in Putnam County, and the burdens of the Supreme Court, Putnam County, and his additional duties as Presiding Justice of the Appellate Term, Second Department (9th and 10th Judicial Districts) are such that Justice Nicolai advises that he will not be able to render timely and considered decisions in undecided Westchester County motions. Accordingly, this court, under the circumstances, holds that Justice Nicolai is unavailable to hear the cross motion for purposes of CPLR 2221 (a), and will proceed to decide it.

By decision and order dated September 14, 2009, the court (Nicolai, J.) denied those branches of plaintiff's motion seeking an order compelling defendants to produce certain witnesses for deposition and reply to certain discovery demands served by plaintiff. The court denied that branch of the motion seeking to

compel the production of witnesses for deposition on the ground that defendants had produced Thomas Cassarella, the comanager on duty in defendants' store on the date of the accident, and plaintiff failed to demonstrate that Mr. Cassarella had insufficient knowledge or that the proposed witnesses possessed information which was material and necessary to the prosecution of the action. At his deposition, Mr. Cassarella testified that he saw the open hole in the recycling room immediately after plaintiff's accident, but had not seen the hole without a cover prior to the accident. In her motion, plaintiff had sought the depositions of the three people who Mr. Cassarella had testified during his deposition were porters/cart handlers for defendants' store at the time of the accident and were responsible for the maintenance of the recycling room. Plaintiff also sought the deposition of the assistant manager of defendants' store, who Mr. Cassarella testified had a key to the recycling room. In support of the motion, plaintiff asserted that these witnesses had access to and frequented the recycling room, such that they may have had notice of the defect. Defendants opposed the motion on the ground that the corporation may designate which of its officers, directors or employees shall represent it for purposes of pretrial depositions, and plaintiff was required to show that the witness possessed insufficient knowledge of the relevant facts or was otherwise inadequate.

In support of the present cross motion, plaintiff contends that the deposition testimony of the four employees, who were identified by Mr. Cassarella as having had access to and frequenting the recycling room, would be relevant to the issue of notice. Plaintiff further contends that she need not accept the veracity of the witness produced by defendants, and that Mr. Cassarella appears to have been less than truthful. In support of the cross motion, plaintiff submits and relies upon the deposition testimony of Melanie Campion, a nonparty witness, which was given on June 26, 2009, after plaintiff made her prior motion. Ms. Campion testified that she visited the recycling room of defendants' store 7 to 10 times per year between the summer of 2005 and late 2006 or early 2007, and observed the open drain hole, which never had a cap like the other drain hole in the room.

It is well settled that a corporation has the right in the first instance to determine which of its representatives will appear for an examination before trial (*Pisano v Door Control*, 268 AD2d 416 [2000]; *Barone v Great Atl. & Pac. Tea Co.*, 260 AD2d 417 [1999]).

"In order to show that additional depositions are necessary, the moving party must show that (1) the representatives already deposed had insufficient knowledge, or were otherwise inadequate, and (2) there is a substantial likelihood that the persons sought for the depositions possess information which is material and necessary to the prosecution of the case" (*Zollner v City of New York*, 204 AD2d 626, 627 [1994]; *see Saxe v City of New York*, 250 AD2d 751 [1998]).

Defendants produced Mr. Cassarella, who was the comanager on duty at the time of plaintiff's accident and had personal knowledge of the incident. Although plaintiff has demonstrated on this cross motion that other employees of defendants may have knowledge regarding the condition of the recycling room at the time of the accident, plaintiff has failed to demonstrate that Mr. Cassarella had insufficient knowledge or his testimony was otherwise inadequate. Notably, Mr. Cassarella testified at this deposition that he frequented the recycling room between two to four times a day. Contrary to plaintiff's contention, Mr. Cassarella's veracity is an issue to be determined at trial and is not the basis for deposing additional witnesses.

With respect to the remaining discovery requested by plaintiff in her prior motion and denied by the court as overbroad, plaintiff has failed to demonstrate that the court overlooked any relevant facts or misapplied any controlling principle of law in reaching its prior decision (*Foley v Roche*, 68 AD2d 558 [1979]). Reargument is not designed to afford the unsuccessful party successive opportunities to reargue issues previously decided or to present arguments different from those originally asserted (*William P. Pahl Equip. Corp. v Kassis*, 182 AD2d 22 [1992], *lv denied and dismissed* 80 NY2d 1005 [1992]; *Foley v Roche*, *supra*).

That branch of the cross motion seeking leave to renew the prior motion based upon the new nonparty witness' deposition testimony, however, is granted. Upon renewal, that branch of the motion seeking certain discovery is granted only to the extent that defendants are directed to provide plaintiff with their maintenance records for the subject recycling room for the 18 months prior to the accident, which occurred on March 30, 2007, within 20 days of this order. The remaining branches of the cross motion are denied.