OPINION OF THE COURT
Carol R. Edmead, J.
This multiparty litigation arises from the March 15, 2008 tragic crane collapse accident during the construction of a highrise building in Manhattan, which caused seven fatalities, serious injuries to many individuals, and multi-million dollars in property damage.
Nonparty witness Matthew Bunora now moves to reargue a ruling made during his deposition by the court (Smith, J.), finding that he waived his Fifth Amendment right against self-incrimination and directing him to answer certain questions about his conversation with the New York County District Attorney’s office (DA’s office) concerning the accident. Bunora seeks, upon reargument, an order permitting him to maintain such privilege.
Factual Background
At the time of the accident, construction workers were in the process of “jumping” (extending the height of) the tower frame. The collapse allegedly occurred when a six-ton steel “collar” being fitted around the crane’s tower at the 18th floor broke free, causing the length of the tower to plummet, and shear off other braces in place at the 9th floor.
Bunora is a former employee of Joy Contractors, Inc., one of the contractors at the site. Bunora was the initial operator of the subject crane immediately before the incident. Bunora was replaced by Wayne Bleidner, who died when the crane collapsed. This action, brought in August 2008 by Denise C. Bleidner, *524 individually and as executrix of the estate of Wayne R. Bleidner, ensued.
Thereafter, in January 2009, the DA’s office secured an indictment against William Rapetti, the owner of Rapetti Rigging Services Inc., for, inter alia, manslaughter and criminally negligent homicide as a result of the accident. Rapetti Rigging Services Inc. was hired by Joy Contractors, Inc., and was in charge of, inter alia, assembling and “jumping” the crane, including raising the height of the crane as the height of the superstructure grew.
In June 2010, Bunora met with Assistant District Attorney Deborah Hickey (the ADA) and provided statements concerning his operation of the crane and his use of the computer that was in the crane. Prior to the meeting, Bunora and the ADA executed a “Debriefing Agreement” (the Proffer Agreement), under which the ADA essentially agreed, with certain exceptions, not to use his statements in any prosecution against him.[1]
Thereafter, on July 12, 2010, Bunora testified in this action, pursuant to a court-ordered subpoena. Plaintiff Crave Foods Inc. (plaintiff) asserts, inter alia, that whether the computer was operating properly immediately before the accident is critical because the crane is used to hold the collar sections and then the tie-in beams. If the computer was inoperative or reporting a false weight, the operator would not be able to tell that the crane was not operating within its safe weight range and thus the crane could be used to pull itself out of true off balance, causing a collapse.
According to plaintiff, Bunora testified that there was a computer in the crane which gave a readout of the radius of the *525 crane and the load on the hook. At the time of the collapse, additional tower sections had been placed into the tower frame, heightening the tower. At the time of the accident, workers were in the process of attaching two collar halves which were tied into the tower as an attachment point for three steel tie-in beams which hold the tower stable and vertical.
During his deposition, Bunora was asked if there was any additional information he provided the ADA that was not testified to at the deposition. It was at this point that Bunora asserted his Fifth Amendment right against self-incrimination. Counsel at the deposition sought a ruling from the court, and, after a brief argument by counsel, the court ruled that Bunora waived his Fifth Amendment privilege because of his conversation with the ADA, notwithstanding the fact that such statements were made pursuant to a “proffer” agreement with the ADA (transcript at 79). The court directed that Bunora “answer the question” (transcript at 80). Nevertheless, Bunora reasserted his Fifth Amendment privilege, the deposition was adjourned, and this application to reargue the court’s ruling followed.
In support of reargument, Bunora contends that the Fifth Amendment protects him against disclosures he reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used, and that he did not waive this right.
Bunora then contends that the three prongs which must exist in order for a waiver to be found have not been satisfied. First, his statements to the ADA were not made under oath, and were not made at a trial or part of a grand jury proceeding. Further, since Bunora’s statements to the ADA could not be used against him by virtue of the Proffer Agreement, what he told her was not incriminating. To be sure, his statements to the ADA did not increase his chances of criminal prosecution or conviction. And, even if Bunora spoke to the ADA in the absence of the Proffer Agreement, any incriminating statements were unsworn and thus do not result in a waiver of his Fifth Amendment right.
Second, Bunora argues, he did not make any distorted statement, which created a significant likelihood that, absent further testimony, the finder of fact would be left with, and prone to rely on, a distorted version of the truth stemming from earlier testimony.
Third, since Bunora did not make any distorted statement, Bunora had no reason to know that his statements would cause a distortion.
*526 Bunora argues that, if forced to testify as to the matter he believes is privileged, Bunora may say something incriminating. Any witness, therefore, who speaks to a prosecutor, police officer, or even a friend would be unable to later assert the Fifth Amendment privilege if called to testify at a judicial proceeding. Under the court’s rationale the ADA could have called Bunora to testify in the trial against Rapetti and forced him to testify under the theory that because he had already spoken with her, he waived his Fifth Amendment privilege. The court’s ruling, if maintained, would have a chilling effect on the government’s ability to secure information from witnesses, since no one would cooperate with the prosecution knowing that a proffer agreement is worthless. Further, that Bunora is not a criminal target of the prosecution is irrelevant.
In response, plaintiff and, by adoption, defendants East 51st Street Development Company, LLC and Reliance Construction Ltd. (opponents), oppose the motion and cross-move for an order (1) finding Bunora in contempt of court for failure to obey the court’s order directing him to answer and (2) for attorney’s fees related to a second deposition of Bunora necessitated by his refusal to answer the questions as ordered.
The opponents argue that Bunora’s motion is not predicated on any facts overlooked by the court. Further, Bunora failed to demonstrate that the court misapplied the law regarding the Fifth Amendment privilege against self-incrimination. Bunora failed to show that he is the target of a criminal prosecution or engaged in conduct in which he can he held criminally liable. Bunora cannot demonstrate that the danger of self-incrimination is substantial and real given that, admittedly, his conversation with the ADA was not self-inculpatory and he was not the target of criminal prosecution. Further, Bunora’s equivocation as to whether his statements were incriminatory or whether they may be incriminatory does not evince a substantial and real danger.
Plaintiff also maintains that Bunora’s sporadic invocation of the privilege, by answering questions specific to the computer (stating twice that there were no problems with the computer without asserting the privilege) but refusing to answer at other times, is improper and constitutes a waiver of the privilege. Case law holds that a person cannot waive his privilege under the constitutional provisions and give testimony to his advantage and then in the same proceeding assert his privilege and refuse to answer questions that are to his disadvantage. And if, accord *527 ing to Bunora, the computer worked properly, then his testimony regarding the computer would not be incriminatory, thereby rendering his assertion of the Fifth Amendment improper.
Therefore, as the court’s order directing Bunora to answer was unequivocal and proper, his continued refusal to answer the question constitutes a basis for a finding of contempt of court. Additionally, costs and expenses, including counsel fees, may be recoverable in a contempt proceeding.
In reply, Bunora argues that the court’s previous ruling, issued without an opportunity to review the law and based on plaintiffs incorrect statements of the law, was made in error. The court acknowledged that Bunora may not have waived his Fifth Amendment right by speaking with the ADA by inviting him to reargue or appeal. Bunora points out that plaintiff abandoned the argument that his conversation with the ADA must be disclosed even if incriminating. Plaintiff now argues that Bunora waived his Fifth Amendment right because his moving papers claim that his statements were not incriminating, but ignores the fact that the Proffer Agreement protected Bunora’s statements; it was the proffer, not the contents of what was said during the meeting, that made Bunora’s statements nonincriminating. The proffer was demanded because Bunora was concerned that in its absence he might incriminate himself. Bunora need not be a target of a criminal investigation in order to legally assert the privilege.
The DA’s office ultimately sought an indictment against Rapetti on the theory that Rapetti violated proper safety standards by using a defective strap to support the crane. Given these actions by the DA’s office, Bunora has a real and legitimate right to be concerned about being charged with a crime. Bunora’s testimony that there was nothing wrong with the computer is a very different issue than how the computer was being used. Although Bunora’s testimony about the computer was not incriminating, if forced to testify about his operation of the crane computer, he might incriminate himself. And, because Bunora never said anything incriminating at his deposition, he never waived his Fifth Amendment privilege.
As to the contempt of court application, the court was equivocal in its ruling. Even though the court ordered Bunora to answer the subject questions, the deposition transcript indicates that if Bunora did not accept her ruling, he could file an order to show cause and an appeal. And, Bunora promptly moved to reargue, after the court imposed a stay of its own order and af *528 ter the court expressed to plaintiff that its decision may not have been made with sufficient consideration. Bunora also points out that plaintiffs motion for contempt is based on an argument plaintiff has abandoned.
Discussion
A motion for leave to reargue under CPLR 2221 “is addressed to the sound discretion of the court and may be granted only upon a showing ‘that the court overlooked or misapprehended the facts or the law or for some reason mistakenly arrived at its earlier decision’ ” (William P. Pahl Equip. Corp. v Kassis, 182 AD2d 22, 27 [1st Dept 1992], lv denied in part and dismissed in part 80 NY2d 1005 [1992], rearg denied 81 NY2d 782 [1993]). Reargument is not designed to afford the unsuccessful party successive opportunities to reargue issues previously decided (Pro Brokerage v Home Ins. Co., 99 AD2d 971 [1984]) or to present arguments different from those originally asserted (Foley v Roche, 68 AD2d 558 [1979]; William P. Pahl Equip. Corp. v Kassis, supra). On reargument, the court’s attention must be drawn to any controlling fact or applicable principle of law which was misconstrued or overlooked (see Macklowe v Browning School, 80 AD2d 790 [1st Dept 1981]).
At the deposition at issue, Bunora was asked what he told ADA Hickey:
“Q: What did you speak about with her?
“A: Pretty much the same thing you guys are asking me. The same things you guys have been asking me all morning, same questions.
“Q: What did you tell Debra Hickey?
“A: The same stuff I’m answering to you today.
“Q: Is there anything that you didn’t tell us today that you did say to Debra Hickey?
“A: What I’m answering you guys is my honest answers. I can’t — you know, I’m not telling you anything different than I told her.”
When probed further, Bunora refused to answer and broadly asserted privilege:
“Q: Is there anything additional that you spoke about with her that we haven’t spoken about today? You can answer if you understand the question.
“mr fink: I think there is a pending question.
“A: There is [sic] things I spoke with the district at *529 torney about that I take the Fifth on.
“Q: Is the [re] anything additional you spoke with the district attorney on that you haven’t spoken with us about today?
“mr fink: The answer is yes.
“. . . colloquy . . .
“A: Yes.
“Q: What else did you speak about with the district attorney that you didn’t speak about with us here today?
“mr fink: He just said he’s asserting his Fifth Amendment right.” (Emphasis added.)
In issuing its earlier ruling directing Bunora to answer the question, the court reasoned that there was no indication that Bunora was a “target,” and there was no indication that he had a founded belief that he was a target. Thus, Bunora could not “just” assert the privilege (transcript at 71). According to the court, the right to assert the privilege “only comes if there is a criminal or a threat of criminal prosecution” (transcript at 73). Although the court was advised that Bunora’s statements to the ADA, which counsel at the deposition sought to elicit, were made only as a result of the Proffer Agreement, the court stated that the Proffer Agreement was only between the ADA and Bunora, and did not insulate or grant protection or privilege in the civil action.
Bunora’s argument that the court’s ruling was contrary to the law concerning the Fifth Amendment and waiver of same warrants the grant of leave to reargue.
The Fifth Amendment provides, “No person . . . shall be compelled in any criminal case to be a witness against himself” (US Const Fifth Amend). The Fifth Amendment privilege against self-incrimination can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory (Kastigar v United States, 406 US 441 [1972]; see Matter of Agnello v Corbisiero, 177 AD2d 445 [1st Dept 1991]; Bradley v O’Hare, 2 AD2d 436, 440 [1st Dept 1956] [“(t)he right of a witness in a civil suit to be protected against any form of self incrimination under legal compulsion ... is available to a witness in an examination before trial”]). However, “[w]hile a party may not be compelled to answer questions that might adversely affect his criminal interest, the privilege does not relieve the party of the usual evidentiary burden attendant upon a civil proceeding; nor does it afford any protection against *530 the consequences of failing to submit competent evidence” (Access Capital v DeCicco, 302 AD2d 48, 51 [1st Dept 2002], citing United States v Rylander, 460 US 752, 761 [1983] [“the claim of privilege is not a substitute for relevant evidence”]). Thus, having asserted the privilege, Bunora bears the burden of sustaining the claim, as the burden of proof is on the one who asserts the privilege (Walsh v Parkchester Gen. Hosp., 33 AD2d 540 [1st Dept 1969]).
That being the case, “ ‘[a]n individual may invoke the Fifth Amendment to decline to answer a deposition question when the individual has reasonable cause to apprehend that answering the question will provide the government with evidence to fuel a criminal prosecution’ ” (Lopez v City of New York, 2007 WL 2228150, *6, 2007 US Dist LEXIS 55545, *16 [ED NY 2007], quoting OSRecovery, Inc. v One Groupe Intl., Inc., 262 F Supp 2d 302, 306 [SD NY 2003]). “The protection of the [Fifth Amendment] privilege is confined to instances where the witness has reasonable cause ... to believe that a direct answer would support a conviction or furnish a link in the chain of evidence needed to prove a crime” (Carter-Wallace, Inc. v Hartz Mtn. Indus., Inc., 553 F Supp 45, 49 [SD NY 1982] [internal quotation marks and citation omitted]), and the “privilege protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used” (Kastigar v United States at 445). “[T]he right to assert one’s privilege against self-incrimination does not depend upon the likelihood, but upon the possibility of prosecution” (Carter-Wallace, Inc. v Hartz Mtn. Indus., Inc. at 49, quoting In re Master Key Litig., 507 F2d 292, 293 [9th Cir 1974]). Thus, as pointed out by the opponents to his motion, the Fifth Amendment, as a defense to withhold disclosure, is ineffectual unless Bunora “has made ‘a colorable showing that he [was] involved in some activity for which he could be criminally prosecuted’ ” (Matter of Kourakos v Tully, 92 AD2d 1051, 1051 [1983] [citation omitted]). “If neither the question nor the setting in which it is asked suggests a real and appreciable danger of self incrimination, the [proponent of the privilege] is obliged to come forward with some indicia of potential incrimination” (id., citing United States v Neff, 615 F2d 1235, 1240 [1980], cert denied 447 US 925 [1980]). Indeed, “[t]he danger of self-incrimination must be real, not remote or speculative” (OSRecovery, Inc. v One Groupe Intl., Inc., 262 F Supp 2d 302, 306 [SD NY 2003] [internal quotation marks and *531 citation omitted]). Determining whether the privilege is available in given circumstances thus involves essentially a factual inquiry (id.). A judge must determine, “ ‘from the implications of the question, in the setting in which it is asked,’ whethér ‘a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result’ ” (id. [citation omitted]).
The court’s previous ruling, premised upon the notion that the privilege “only comes if there is a criminal or a threat of criminal prosecution,” is not wholly inconsistent with case law, and its finding that there was no indication that Bunora was a “target,” or of a founded belief that he was a “target,” was supported by the record. A witness may not refuse to answer “merely because he declares that in so doing, he would incriminate himself — his say-so does not of itself establish the hazard of incrimination” (Textron Financial Corp. v Eddy's Trailer Sales Inc., 2010 WL 1270182, *2, 2010 US Dist LEXIS 32067, *7 [ED NY 2010] [internal quotation marks and citation omitted]). And, here, Bunora, on reargument, has yet to make a showing that the statements he seeks to shield from disclosure (those statements he made to the ADA) would incriminate him or reflect his involvement in activity for which he could be criminally prosecuted. Instead of establishing the application of the Fifth Amendment to his statements, or at least presenting to the court the statements he seeks to shield from discovery, Bunora’s motion rests principally on the purported failure of the opponents to establish that he waived the privilege. Further, Bunora, through his counsel’s affidavit, states that if “forced to testify as to the subject matter which he has asserted his Fifth Amendment privilege, Bunora may say something incriminating.” (Affidavit of Jonathan A. Fink H 9 [emphasis added].) However, such conclusory, unsupported statements are insufficient to establish entitlement to assert the Fifth Amendment privilege. The record fails to indicate that one’s operation of the computer in the crane and description of the manner in which the computer functions gives rise to criminal activity. Unfortunately, Bunora failed to demonstrate at the deposition, and on reargument, that the statements he made to the ADA apart from the testimony he gave at the deposition are potentially incriminating, and his ship has now sailed.[2]
*532 That Bunora’s statements to the ADA were made pursuant to the Proffer Agreement does not alter this analysis. Proffer agreements “ ‘are interpreted according to principles of contract law’ ” (United States v Mergen, 2010 WL 395974, *3, 2010 US Dist LEXIS 9163, *8 [ED NY 2010], quoting United States v Rexach, 896 F2d 710, 713 [2d Cir 1990]). Here, the Proffer Agreement was solely between the ADA and Bunora, in order to preclude the ADA from using the statements made to her at the meeting in any prosecution against Bunora, with certain exceptions not relevant to this analysis. Therefore, as indicated by the court’s prior ruling, the Proffer Agreement does not apply to the parties in this action. Nor does the Proffer Agreement give Bunora any independent, automatic right to maintain a Fifth Amendment privilege claim apart from his ability to demonstrate entitlement to same. In other words, that his statements to the ADA were privileged from use by the ADA due to the protections afforded by the Proffer Agreement (with certain exceptions), does not translate into a finding that those statements were incriminating and, thus, protected under the Fifth Amendment. And, while Bunora perhaps would not have made his statements to the ADA had he known that he might be compelled to repeat those statements in this proceeding, there is no showing that there is a likelihood such statements repeated at the deposition will lead to his prosecution. Having failed to come forward with any indicia of potential incrimination, Bunora’s assertion of the Fifth Amendment privilege in this action lacks legal justification. Therefore, Bunora shall appear at a deposition and provide answers to questions posed to him concerning the statements he made to the ADA.
The issue of whether Bunora established his entitlement to assert the Fifth Amendment privilege at his deposition is unrelated to the separate issue of whether Bunora’s conversation with the ADA constitutes a waiver of his right to assert the Fifth Amendment. The loss or “waiver” of the protection afforded by the Fifth Amendment privilege against self-incrimination “may be inferred from a witness’ course of conduct or prior statements concerning the subject matter of the case” (In re DG Acquisition Corp., 208 BR 323, 327 [SD NY 1997]). A waiver of such a fundamental constitutional guarantee is not to be lightly inferred and courts are to *533 “ ‘indulge every reasonable presumption against finding a testimonial waiver’ ” (id., quoting Klein v Harris, 667 F2d 274, 287 [2d Cir 1981] [“ ‘testimonial waiver’ is not to be lightly inferred”], citing United States v O’Henry’s Film Works, Inc., 598 F2d 313, 318-319 [2d Cir 1979]).
A court should only infer such a waiver
“from a witness’ prior statements if (1) the witness’ prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and (2) the witness had reason to know that his prior statements would be interpreted as a waiver of the [F]ifth [A]mendment’s privilege against self-incrimination” (Klein v Harris at 287).
As to the first prong of the test for a testimonial waiver, courts consider whether the witness’ prior testimony has created a significant danger of distortion (Rogers v United States, 340 US 367 [1951]).
“The requisite reason to know that a waiver might be inferred should be found only if the witness’ prior statements were (a) ‘testimonial,’ meaning that they were voluntarily made under oath in the context of the same judicial proceeding, and (b) ‘incriminating,’ meaning that they did not merely deal with matters ‘collateral’ to the events surrounding commission of the crime, but directly inculpated the witness on the charges at issue” (Klein v Harris, 667 F2d at 288 [citations omitted]).
Thus, “[w]here a witness has made statements that were both ‘testimonial’ and ‘incriminating’ ... he has made statements that, by virtue of their ‘testimonial’ nature, will likely influence the finder of fact, and that, by virtue of their ‘incriminating’ nature, contain information that the witness was privileged not to reveal” (Klein v Harris, 667 F2d at 288).
The court notes that the opponents do not dispute that the elements of waiver have not been met. Interestingly, the opponents also do not contest that Bunora’s statements to the ADA were unsworn, and therefore cannot be characterized as “testimonial.” Nor do the opponents challenge Bunora’s claim that the statements were not “incriminating” since the ADA is *534 precluded from using such statements in support of any prosecution against Bunora.[3]
Instead, the opponents argue that Bunora waived his Fifth Amendment privilege by his “intermittent, inconsistent and selective invocation” of the privilege (Colin E. Kaufman mem of law at 6). In this regard, Bunora waived his right to assert this privilege against questions concerning the computer. On the one hand, Bunora asserted the Fifth Amendment as to how the computer functions, but later testified that “[t]here was no computer problems” when asked if anyone was aware of any computer problems. “A witness who fails to invoke the Fifth Amendment against questions as to which he could have claimed it is deemed to have waived his privilege respecting all questions on the same subject matter” (O’Henry’s Film Works, Inc., 598 F2d at 317, citing Rogers v United States, 340 US 367 [1951]; see also OSRecovery, Inc. v One Groupe Intl., Inc., 262 F Supp 2d at 310 [2003] [finding that a party to the lawsuit who voluntarily testified via an affidavit in order to strengthen his legal position waived his privilege against self-incrimination with regard to matters relevant to his affidavit; witness may not offer such testimony and yet “claim the right to be free from cross-examination on matters raised by her own testimony on direct examination” (internal quotation marks and citation omitted)]). And, a witness in a civil case may “refuse to answer any questions about a matter already discussed, even if the facts already revealed are incriminating, as long as the answers may tend to further incriminate him” (Carter-Wallace, Inc. v Hartz Mtn. Indus., Inc., 553 F Supp 45, 50 [1982] [stating that where executives had given deposition testimony in civil actions after the grand jury was convened, such testimony should still not be construed as waiving their Fifth Amendment rights (internal quotation marks and citation omitted)]). However, there is no justification for Bunora’s blanket invocation of the privilege. There is simply no showing that the answer to the question to which a claim of privilege was directed would subject Bunora to a real danger of further crimination. “[A] witness who foregoes the protection of the constitutional privilege against self-incrimination by giving testimony to his advantage *535 or to the advantage of his friends cannot in the same proceeding assert the privilege and refuse to answer questions that are to his disadvantage or the disadvantage of his friends” (People v Bagby, 65 NY2d 410, 414 [1985], citing People v Cassidy, 213 NY 388, 394 [1915]).
Therefore, upon reargument, the court adheres to its earlier ruling and directs Bunora to provide testimony concerning his use of the computer in the crane, even if his answers reveal the conversation he held with the ADA pursuant to the Proffer Agreement.
As to the cross motion for an order finding Bunora in contempt, and awarding attorney’s fees recoverable in a contempt proceeding, such request is unwarranted. To prevail on a motion to punish a party for civil contempt, the movant must demonstrate that the alleged contemnor has violated a clear and unequivocal court order, known to the parties (Matter of Condon v Inter-Religious Found, for Community Org., Inc., 23 Misc 3d 1129[A], 2009 NY Slip Op 50988[U] [Sup Ct, NY County 2009], citing Judiciary Law § 753 [A] [3]). The actions of the alleged contemnor must have been calculated to, or actually defeated, impaired, impeded or prejudiced the rights or remedies of the other side (Condon v Inter-Religious Found, for Community Org., Inc., supra, citing Farkas v Farkas, 209 AD2d 316 [1st Dept 1994]). A party seeking contempt must show that there are no alternative effective remedies available (id.).
Although Bunora failed to follow the court’s direction to answer the questions posed at his deposition, Bunora was invited to seek reargument and appeal the court’s ruling. Bunora’s instant motion ensued and plaintiffs argument giving rise to the court’s ruling (i.e., that Bunora’s conversation with the ADA constitutes a waiver) has been abandoned and replaced with a separate waiver argument, not made at the deposition. Therefore, under the circumstances, it cannot be said that Bunora “violated a clear and unequivocal court order,” so as to support a contempt finding.
Conclusion
Based on the foregoing, it is hereby ordered that the motion by Matthew Bunora for leave to reargue the ruling made during his deposition by the court (Smith, J.) is granted; however, upon reargument, Bunora’s application, upon renewal, for an order *536 permitting him to maintain such privilege is denied; and it is further ordered that the cross motion by plaintiff for contempt and costs and expenses is denied.

. The Proffer Agreement provides, in relevant part, that
“(1) Should any prosecutions be brought against Client [Bunora] by this Office, this Office will not offer as evidence in its case-in-chief any statement made by Client at the meeting, except in a prosecution for false statements or peijury.
“(2) Notwithstanding paragraph one, (a) this Office may use information derived directly or indirectly from Client’s statements at the meeting for the purpose of obtaining leads to other evidence . . . and (b) should any prosecution of Client be undertaken, this Office may use statements made by Client at the meeting . . . for the purpose of cross-examination should Client testify, or to rebut any evidence offered by or on behalf of Client
“(3) This agreement is limited to the statements made by Client at the meeting held on this date, and does not apply to any oral, written or recorded statements made by Client at any other time . . . .” (Emphasis added.)

. The court notes that, while Bunora cannot assert his Fifth Amendment right to refrain from answering the subject questions, a confidentiality agree *532 ment between the parties may preserve the core Fifth Amendment right from invasion by the use of his deposition testimony in any subsequent criminal case by the ADA (cf. Chavez v Martinez, 538 US 760 [2003]).

. Although a waiver of the privilege in one proceeding does not affect a witness’ rights in another proceeding (United States v James, 609 F2d 36 [2d Cir 1979], citing Ottomano v United States, 468 F2d 269, 273 [1st Cir 1972], cert denied 409 US 1128 [1973]; United States v Miranti, 253 F2d 135, 139-140 [2d Cir 1958]), Bunora failed to establish a sufficient basis to support his Fifth Amendment right as to the questions posed at his deposition.