Solomon, J.
(dissenting and voting to reverse the judgment and order a new trial in the following memorandum). I must respectfully dissent. I find that the errors in this matter require a new trial.
At the outset, it should be noted that this was a framed-issue trial in which the roles of the plaintiff and defendant were reversed. The joint trial order of September 21, 2006 framed the issue as “solely limited to the issue of whether plaintiff was fraudulently incorporated within the meaning of . . . Mallela. ” Thus, this matter was tried solely on the defense that plaintiff professional corporation was not owned or controlled by Dr. Carothers but was de facto owned and controlled by nonparties Sher and Vayman. The roles of the defendant and the plaintiff were reversed throughout the trial, including the initial opening and final summation by defendant.
I agree with the majority that, in limited circumstances, the invocation of a Fifth Amendment privilege by a nonparty wit *47 ness may result in a negative inference being taken against a party (see Searle v Cayuga Med. Ctr. at Ithaca, 28 AD3d 834 [2006]; State of New York v Markowitz, 273 AD2d 637 [2000]; Califano v City of New York, 212 AD2d 146 [1995]).
In this matter, the Civil Court relied on the Second Circuit decision in LiButti v United States (107 F3d 110 [2d Cir 1997]), which delineated factors to be considered in determining whether a negative inference is warranted. The Civil Court found that the evidence submitted in connection with plaintiffs summary judgment motion was a sufficient foundation to find that the nonparty witnesses, Sher and Vayman, were the alter egos of the corporate plaintiff and that, as a result of these nonparty witnesses’ invocation of their Fifth Amendment rights and refusal to answer questions, negative inferences could be taken against plaintiff professional corporation.
During the trial, very substantial portions of these depositions were read to the jury. The court permitted defense counsel to read 214 questions put to Sher and his responsive assertion of his Fifth Amendment privilege, and 189 questions put to Vayman and her responsive assertion of the privilege. In both cases, prior to defense counsel’s reading of the deposition “testimony,” the court instructed the jury that the reading can be “considered by you as evidence in this case just as if [the witness] was seated in front of you.” On summation, defense counsel again read 15 of these questions and non-answers to the jury. The court failed to charge, as a preliminary “threshold” issue, that the jury must find the appropriate fact or facts before drawing an inference against a party by the invocation of Fifth Amendment privilege by a nonparty (see NY PJI 1:76, Comment). The negative-inference instruction was charged to the jury as a permissive inference, with the caveat that the jury could not make its findings based solely on the inference.
I agree with the majority that permitting the use of these “transcripts” in this manner was error. It is axiomatic that questions without answers are not evidence. The standard opening charge, as set forth in the Pattern Jury Instructions, includes: “You may not draw any inference or conclusion from an unanswered question” (PJI 1:7). The standard closing charge includes: “Furthermore, you may not draw any inference from an unanswered question” (PJI 1:21). Indeed, I note that the preliminary instructions of the New York Criminal Jury Instructions (see CJI2d[NY] Preliminary Instructions — Presentation of Evidence) use even clearer and firmer language with respect to *48 the presentation of evidence, stating: “A question by itself is not evidence. It is the question with the answer that is the evidence.” Identical or similar language is found in Howard G. Leventhal, Charges to the Jury and Requests to Charge in a Criminal Case in New York §§ 3:2, 4:82.50, 5:10, 5:12, 41:37, and 69:7.
There is no actual probative value to such “testimony.” In fact, it is not testimony at all but the failure to produce testimony that one would reasonably expect to be offered in support of a party’s position, which results in the negative inference. The prejudicial impact on the jury of hearing this invocation over 400 times is extremely substantial and was compounded by the erroneous charges and the repetition of the questions without answers on defendant’s summation.
The role of Vayman and Sher in the corporation was the essential issue in the case. Undoubtedly, the fact that, when questioned, they felt the necessity to avail themselves of their privilege against self-incrimination reflects poorly on the strength of plaintiff’s case. Nevertheless, this cannot be considered evidence-in-chief for the defense but only “may be considered by a jury in assessing the strength of evidence offered by the opposite party on the issue which the witness was in a position to controvert” (Marine Midland Bank v Russo Produce Co., 50 NY2d 31, 42 [1980]; see also Stolowski v 234 E. 178th St. LLC, 12 Misc 3d 1159[A], 2006 NY Slip Op 50965[U] [Sup Ct, Bronx County 2006]; cf. Matter of Commissioner of Social Servs. v Philip De G., 59 NY2d 137, 141 [1983]).
The manner in which the Fifth Amendment operates in this context would not be widely known. To avoid the possibility of an inadvertent waiver, a witness who legitimately fears that his or her testimony may be used against him or her in a prosecution would be well advised to decline to answer any questions. In that case, whether the witness is asked one question or hundreds of questions, the answer will be the same invocation of privilege, and there is no meaningful difference between a single invocation and hundreds of invocations.
At their depositions, Sher and Vayman invoked their Fifth Amendment privilege and essentially declined to answer any questions. Upon hearing the invocation some 400 times, the average juror could well be led to believe that there were a great many independent decisions to invoke, not a blanket determination to invoke as to all questions. The average juror would find this exercise far more meaningful than it actually is.
*49 It is very doubtful that the average juror would grasp that a witness may easily and inadvertently waive the privilege by answering any questions.
“ ‘A witness who fails to invoke the Fifth Amendment against questions as to which he could have claimed it is deemed to have waived his privilege respecting all questions on the same subject matter’ ([United States v] O’Henry’s Film Works, Inc., 598 F2d [313, 317 (1979)], citing Rogers v United States, 340 US 367 [1951] . . .)” (Matter of East 51st St. Crane Collapse Litig., 30 Misc 3d 521, 534 [Sup Ct, NY County 2010]).
“[A] witness who foregoes the protection of the constitutional privilege against self-incrimination by giving testimony to his advantage or to the advantage of his friends cannot in the same proceeding assert the privilege and refuse to answer questions that are to his disadvantage or the disadvantage of his friends (People v Cassidy, 213 NY 388, 394)” (People v Bagby, 65 NY2d 410, 414 [1985]).
The role of the nonparty witnesses, Vayman and Sher, in the professional corporation was a crucial and essential issue for the jury on questions number one and number two of the verdict sheet regarding whether plaintiff was “fraudulently incorporated.” The central thesis of the defense was that these individuals were the de facto owners and people in control of the professional corporation. The errors in allowing the deposition “transcripts” to be widely read, the charge that these unanswered questions could be considered as evidence, and their re-reading to the jury on summation corrupted the central issue in the case.
Undoubtedly, there is significant evidence that supports the verdict. There was, however, evidence which, if credited, supports plaintiffs position that Dr. Carothers solely owned and controlled the professional corporation. There is a reasonable view of the evidence that Dr. Carothers had rather bad business judgment, was a poor manager who put far too much trust in, and delegated too much authority to, his office manager, and was a very mediocre administrator, but nevertheless owned and controlled the professional corporation. Had the jury found for plaintiff, I do not believe the evidence is so overwhelming as to warrant a judgment notwithstanding the verdict.
I disagree with the majority on whether the misuse of the deposition “transcripts” and the erroneous charge is reversible er *50 ror. The majority finds that the error is harmless because “there is no indication that the evidence had a ‘substantial influence upon the result of the trial.’ ” I must respectfully disagree.
The Court of Appeals has held that, in determining whether an error was harmless, “[t]he correct rule is that an error is only deemed harmless when there is no view of the evidence under which appellant could have prevailed (2A Wein stein-KornMiller, NY Civ Prac, par 2002.03, p 20-12)” (Marine Midland Bank v Russo Produce Co., 50 NY2d at 43). Where erroneously excluded evidence “could have affected the outcome of the trial[, the] exclusion of the evidence ... [is not] harmless error. Hence, reversal is warranted” (Garricks v City of New York, 1 NY3d 22, 27 [2003] [citations omitted]).
The Appellate Division, Second Department, considers the impact of the error on the proof in the case.
“The error . . . cannot be considered harmless, as it bore on the ultimate issue to be determined by the jury (see Cheul Soo Kang v Violante, 60 AD3d at 992; Noakes u Rosa, 54 AD3d 317 [2008]; Hatton v Gassier, 219 AD2d 697 [1995]; Gagliano v Vaccaro, 97 AD2d 430 [1983]; Murray v Donlan, 77 AD2d 337 [1980])” (Sanchez v Steenson, 101 AD3d 982, 983 [2012]; see also Conners v Duck’s Cesspool Serv., 144 AD2d 329 [1988]).
The cumulative effect of the errors is an important consideration (see McGloin v Golbi, 49 AD3d 610 [2008]; Bayne v City of New York, 29 AD3d 924 [2006]).
Under this analysis, I am unable to find that the errors were harmless. The errors bore directly on the ultimate issues in the case and the cumulative effect of the errors was not harmless.
Finally, I concur with the majority concerning setting aside the verdict on the third and fourth questions on the verdict sheet, regarding Dr. Carothers’ actual practice of medicine in connection with the professional corporation. In addition to finding this defense lacking adequate support in the evidence to support the verdict, I also find that plaintiff was not given fair notice that this issue would be submitted for the jury’s consideration.
For the reasons stated herein, I would reverse the judgment and order a new trial.
Rios, J.P, and Aliotta J., concur; Solomon, J. dissents in a separate memorandum.